LUIS F. COLL WATLINGTON, demandante, recurrido y recurrente, *v.* RAFAEL PICÓ, SECRETARIO DE HACIENDA, demandado, recurrente y recurrido.

Número 12489.

*Sometido:* 21 de marzo de 1960. *Resuelto:* 7 de diciembre de 1960.

*Hon. Secretario de Justicia Interino Francisco Espinosa, Jr.,
Arturo Estrella, Secretario Auxiliar* y *Luis F. Candal, Procurador Auxiliar,* abogados del recurrente-recurrido; *F. M.
Susoni,* abogado del recurrido-recurrente.

EL JUEZ ASOCIADO SEÑOR SALDAÑA emitió la opinión del Tribunal.

En este pleito se plantea una sola cuestión: ¿están exentos de tributación el equipo, el mobiliario y los instrumentos de que se sirve un dentista en su consultorio profesional? Para resolver el punto es preciso interpretar el alcance que tiene el art. 291 (*i*) del Código Político, 13 L.P.R.A. § 551 (*i*). Allí se dispone que "Estarán exentas de tributación para la imposición de contribuciones las propiedades siguientes: . . . (*i*) *Los instrumentos profesionales y las herramientas o aparatos de mecánicos y artesanos, y que para servirse de*

*ellos hayan de ser movidos o usados exclusivamente a mano."*
(Bastardillas nuestras.) Como veremos más adelante, hay
que tener muy en cuenta la versión inglesa de ese precepto
de ley. Dice así: "The following property shall be exempt
from assessment for taxation purposes: . . . (*i*) *The pro-
fessional tools or working tools of mechanics, or artisans,
moved or worked exclusively by hand."* (Bastardillas nues-
tras.) Adviértase que esta disposición de nuestro Código
Político fue promulgada en 1902 y que nunca ha sufrido
alteración o modificación alguna. Estatutos Revisados y
Códigos de Puerto Rico, 1902, pág. 431, art. 291 (*i*) ; Revised
Statutes and Codes of Puerto Rico, 1902, págs. 431, art.
291 (*i*).

Sobre los hechos no hay controversia. El demandante
Luis F. Coll Watlington es dentista y ejerce su profesión en
Santurce. Todo el instrumental, mobiliario y equipo que
poseía en su consultorio fue tasado en un valor de $5,220
para el año contributivo de 1955–56. A base de esa tasación
el Secretario de Hacienda le impuso una contribución sobre
propiedad mueble que ascendió a $251. No conforme, Coll
Watlington acudió al Tribunal Superior dentro del término
y en la forma que establece la ley. 13 L.P.R.A. § 282. En
su demanda alegó que la referida propiedad mueble "está
exenta de toda contribución por razón de constituir . . . un
instrumento de trabajo del aquí querellante" y solicitó que
se dejara sin efecto "tanto la tasación hecha por el querellado
sobre las mencionadas propiedades, como la contribución
impuesta en su totalidad". Al contestar, el Secretario de
Hacienda admitió los hechos esenciales. Pero adujo como
defensa que " . . . la propiedad tasada objeto de este litigio
no goza de exención contributiva alguna."

La cuestión de derecho así suscitada en las alegaciones
fue sometida al tribunal de instancia mediante una estipu-
lación que suscribieron los abogados de ambas partes el 29
de enero de 1958. Literalmente dice como sigue:

30

"Comparecen ambas partes en este litigio representadas por sus respectivos abogados y respetuosamente someten a la consideración y aprobación del Tribunal la siguiente estipulación la que se hizo en cumplimiento de la Orden dada por el dicho Tribunal en la vista de este caso el día 11 de diciembre pasado:

1.—Que de común acuerdo han convenido en la siguiente relación y valoración del mobiliario y equipo de trabajo del demandante para el año a que se contrae esta acción:

| | | | |
|---|---|---|---:|
| (a) | 5 | Unidades dentales con lámparas (incluyendo motores), $350 cada una | $1,750.00 |
| (b) | 6 | Motores eléctricos (de las anteriores unidades valorados separadamente a $50 cada uno) | 300.00 |
| (c) | 1 | Máquina de Rayos X con su silla | 500.00 |
| (d) | 1 | Máquina de Rayos X | 70.00 |
| (e) | 1 | Esterilizador | 125.00 |
| (f) | | Herramientas de trabajo | 350.00 |
| (g) | 3 | Gabinetes | 140.00 |
| (h) | 1 | Nevera | 60.00 |
| (i) | | Efectos de laboratorio dental | 750.00 |
| (j) | 1 | Mesa con dos (2) sillas | 25.00 |
| (k) | 2 | Lavamanos | 30.00 |
| (l) | 1 | Escritorio y su butaca | 35.00 |
| (m) | 1 | Suction Vacuum Machine | 30.00 |
| (n) | 2 | Cajas de Seguridad | 100.00 |
| (o) | 1 | Juego Muebles Salón de Espera | 75.00 |
| (p) | 1 | Máquina de Escribir | 40.00 |
| (q) | 1 | Archivo de Acero | 20.00 |
| (r) | | Lámparas Flourescentes | 30.00 |
| (s) | 6 | Zafacones | 35.00 |
| (t) | | Instrumentos Quirúrgicos | 500.00 |
| (u) | 2 | Abanicos Eléctricos | 25.00 |
| (v) | 1 | Mesa Utility | 10.00 |
| (x) | | Juego de Lámparas | 255.00 |

2.—Que es la contención del demandante que de acuerdo con la ley solamente son tributables aquellos bienes muebles de un profesional consistentes de maquinaria movida mecánicamente y que por consiguiente, a su juicio, únicamente es tributable el renglón (b).

2.—Que es la contención del demandado que es tributable cualquier equipo de trabajo de un profesional, para servirse

del cual haya que usar en cualquier grado la electricidad o cualquier fuente motriz que no sea manual.

Las partes respetuosamente solicitan del Tribunal le imparta su aprobación a la presente estipulación y que en su consecuencia resuelva que la relación y la valoración de los bienes muebles del demandante para el año a que se contrae esta acción es la que se consigna en el apartado primero de la misma, a todos los efectos legales, y que se resuelva asimismo si para fines contributivos de acuerdo con la ley solamente son tributables los motores eléctricos incorporados a una unidad de trabajo de un profesional, o si por el contrario es tributable la unidad completa, con los demás pronunciamientos pertinentes en ley."

La Sala sentenciadora dio por sentado que existían dos categorías de bienes muebles exentos a tenor con el inciso ($i$) del art. 291: (1) los instrumentos profesionales y (2) las herramientas o aparatos de mecánicos y artesanos. Partiendo de ese supuesto, resolvió que la frase "y que para servirse de ellos hayan de ser movidos o usados exclusivamente a mano" modifica y limita todo lo que aparece anteriormente en dicho inciso, por lo cual es una condición que deben llenar ambas clases de bienes muebles para gozar de la exención. Así se explica la primera conclusión que contiene el fallo recurrido: todos los instrumentos en el consultorio dental del demandante que se mueven por electricidad están sujetos al pago de contribuciones sobre la propiedad. Sin embargo, el tribunal a quo interpretó en forma amplia y liberal el concepto de "instrumentos profesionales" que son movidos o usados exclusivamente a mano. De ahí su segunda conclusión: que "dentro de la frase 'instrumentos profesionales y herramientas' caen ciertos muebles mínimos y básicos necesarios para la oficina de un profesional, por lo que estimamos que están exentos de esa contribución los renglones 'f', 'g', 'i', 'j', 'k', 'l', 'o', 'p', 'q', 's', 't', y 'v' [consignados en la estipulación]." Ambas partes apelaron de la sentencia que se dictó con arreglo a esos pronunciamientos.

En sus recursos las partes sostienen posiciones antagó-

nicas. El demandante alega que *todos* los bienes muebles que posee en su consultorio están exentos de tributación, fundándose en que "usados a mano" y "movidos a mano" tienen distintas significaciones. Por eso arguye que las unidades dentales, las máquinas de rayos X, el esterilizador y los demás ítems de bienes excluídos por el juez sentenciador son "usados a mano" aunque su movimiento se deba a la fuerza de una corriente eléctrica. Por su parte el Secretario de Hacienda alega que, salvo las herramientas de trabajo y los instrumentos quirúrgicos, ninguno de los bienes muebles que el juez sentenciador declaró exentos constituyen "instrumentos profesionales". Además, mantiene que debieron declararse tributables las herramientas de trabajo y los instrumentos quirúrgicos en este caso por falta de prueba en cuanto a si de hecho eran movidos o usados exclusivamente a mano. Por razones distintas a las que aduce el Secretario de Hacienda, creemos que una recta interpretación del artículo 291 (*i*) del Código Político no permite que se exima de tributación a ninguno de los bienes muebles envueltos en este litigio.

Empecemos por obtener el significado verbal que resulta de las palabras con que se expresa la exención legal. En el texto español, prescindiendo por ahora de otros elementos para aclarar el sentido y alcance del estatuto, caben dos posibilidades desde el punto de vista gramatical: (1) que se eximen tanto los "instrumentos" de los profesionales (médicos, dentistas, ingenieros, etc.) como las "herramientas o aparatos" de los mecánicos y artesanos; y (2) que los "instrumentos profesionales", "herramientas" o "aparatos" que se eximen son únicamente aquellos que pertenezcan a mecánicos o artesanos. Sin embargo, en su versión inglesa —que es la original y debe prevalecer para resolver cuestiones de interpretación— (¹) el significado literal de los voca-

_____

(¹) Como el art. 291 (*i*) del Código Político de 1902 se aprobó en inglés y no ha sido enmendado posteriormente, la discrepancia entre el texto español y el texto inglés debe resolverse dando preferencia a este último, de conformidad con la regla de hermenéutica que prescribe el

blos según su natural conexión excluye la primera interpretación antes señalada. En efecto, en la fórmula del texto en inglés se advierte que *"professional tools or working tools"* son nociones que están estrechamente relacionadas y que sirven para nombrar el conjunto de instrumentos, herramientas o aparatos de que se valen los llamados *"mechanics or artisans"* en el ejercicio de sus artes y oficios. Se usa el mismo vocablo *"tools"* con dos calificativos mientras que la versión española habla primero de "instrumentos" y luego de "herramientas o aparatos". Además la estructura sintáctica de toda la oración en el texto inglés establece un nexo indisoluble entre ambas clases de instrumentos (*"tools"*) y la característica común que a renglón seguido se señala: pertenecer a los "mecánicos o artesanos". Por eso, contrario a lo que dio por sentado el juez sentenciador, tanto los "instrumentos profesionales" como los "aparatos y herramientas" deben pertenecer a *mecánicos* o *artesanos* para gozar de la exención que establece la ley. Los instrumentos que usan los dentistas, médicos, ingenieros y otros profesionales, ya sean movidos y usados a mano o impulsados mediante electricidad, no están en ningún caso exentos de tributación.

Si se examinan los propósitos que persigue la exención, veremos que esa conclusión se ajusta al fundamento racional o fin esencial de la ley. Se trata, en primer lugar, de proteger y promover ciertos oficios en que el trabajador lleva a cabo operaciones manuales sirviéndose de instrumentos, herramientas o aparatos "movidos o usados a mano." Lógicamente las actividades que se relacionan con operaciones intelectuales no están incluídas en la exención, aunque exijan el uso de instrumentos que un profesional mueve con sus

art. 13 del Código Civil (31 L.P.R.A. § 13). Véanse *Giusti* v. *Tribl. de Contribuciones*, 70 D.P.R. 117 (1949) y *New Córsica Centrale* v. *Gallardo, Tes.*, 41 D.P.R. 669 (1931). Cf. además *Descartes* v. *Tribl. de Contribuciones y Cerra, Int.*, 74 D.P.R. 567, 582 (1953); *Pérez* v. *Tribl. de Distrito*, 69 D.P.R. 4 (1948); *Mestres* v. *Díaz Román*, 50 D.P.R. 370 (1936); *Pueblo* v. *Tirado*, 68 D.P.R. 289 (1948) y *Pueblo* v. *Buscaglia*, 8 D.P.R. 921, 923 (1941).

propias manos. En segundo lugar, al establecer las bases de la contribución sobre bienes muebles, se partió de un principio básico de equidad en la distribución e incidencia del impuesto: la política pública exige que todas las personas y propiedades compartan por igual la carga de ese tributo. La exención que establece el art. 291 (*i*) es en realidad una excepción a ese principio. Se justifica por la capacidad contributiva muy limitada de los trabajadores que ejercen oficios manuales. Y sería ilógico incluir los instrumentos que usan los profesionales en el ámbito de esa exención.

Adviértase que en muchos estados de la Unión existen exenciones similares a la que establece nuestro artículo 291 (*i*). Jacobs, *Exemption of Tangible Personalty* en *Tax Exemptions, A Symposium Conducted by the Tax Policy League* (1939) 159. Generalmente se usa una fórmula estatutaria muy parecida a la que rige en Puerto Rico. Por ejemplo: "los instrumentos de trabajo de 'mecánicos' (artesanos) que son movidos o usados exclusivamente a mano" (Maryland); "los instrumentos de cualquier 'mecánico' (artesano) que sean necesarios para llevar a cabo las labores de su oficio" (Mississippi); "los instrumentos y herramientas de un 'mecánico' (artesano) o de un agricultor" (Vermont) y "las herramientas que todo 'mecánico' (artesano) posea y use para realizar sus labores" (Wisconsin). Véase *State and Local Tax Service—Property Tax Edition P-H*, vols. 3 (parr. 32,094); 4 (parr. 33,302) y 7 'parrs. 33,076 y 32,048). Los tribunales en dichos estados han resuelto reiteradamente que ese tipo de exención no se extiende a los instrumentos que usan los profesionales, tales como dentistas, médicos, optómetras, ingenieros, etcétera. Véanse *Whitcomb* v. *Reid*, 33 Miss. 567, 569, 66 Am. Dec. 579; *Frantz* v. *Dobson*, 2 So. 75 (Miss. 1887); *Smith and Funck* v. *Osburn*, 5 N.W. 681 (Iowa 1880) y *Town of Albion* v. *Trask*, 41 N.W.2d 627 (Wisc. 1950); 2 Cooley, *The Law of Taxation*, (4ª ed. 1924) sec. 674; Nota en 100 A.L.R.

1033 (1936); 35 C.J.S.—*Exemptions*, pág. 40; y 51 Am. Jur.—*Taxation*, § 547, pág. 548.

■■ No tenemos base para considerar aquí la cuestión suscitada por primera vez en los informes orales de las partes: si existe o no una práctica administrativa que, sin ser jurídicamente obligatoria, pueda tener valor persuasivo al fijar la interpretación del artículo 291 (*i*). En primer lugar, nunca se ha promulgado un reglamento para la ejecución de la ley. Y, en ausencia de tal reglamento, la existencia de cualquier práctica general, constante, prolongada y que haya sido observada con la convicción de que es jurídicamente obligatoria, constituye estrictamente una cuestión de hecho. Los autos no revelan si antes de surgir este caso había echado raíces y adquirido autoridad una práctica administrativa en torno al artículo 291 (*i*). En segundo lugar, no podemos olvidar que el valor persuasivo de los usos administrativos siempre es relativo: depende de una delicada y compleja apreciación de todos los elementos que intervienen en el proceso de interpretación racional de la ley. Véase Lenhoff, *Comments, Cases and Materials on Legislation*, 1949, 723–786. Por eso, cuando el sentido de la ley resulta claro usando los medios racionales de interpretación, "ningún contribuyente puede refugiarse en una práctica administrativa en contrario" y es aplicable la advertencia de que "el dejar de poner en vigor una ley no puede alterar el sentido de la misma". Cf. *Louisville and Nashville R. R. Co. v. United States*, 282 U.S. 740, 741, 759 (1931); *Fishgold v. Sullivan Drydock and Repair Corp.*, 328 U.S. 275, 284–291 (1946) y *Puerto Rico Ilustrado v. Buscaglia, Tes.*, 64 D.P.R. 914, 935–938 (1945).

■ En la estipulación que sometieron las partes al Tribunal Superior, según aparece de los autos, se dieron por probados todos los hechos esenciales del caso. Pero las partes también estipularon respecto a la cuestión básica de derecho planteada en el litigio: la interpretación que debe dársele al artículo 291 (*i*) del Código Político. Se admitió

en la estipulación que los instrumentos de trabajo de un profesional, movidos o usados exclusivamente a mano, están exentos de tributación. En efecto, después de exponer los hechos se hizo constar lo siguiente en los párrafos 2 y 3 de la estipulación: "2.—Que es la contención del demandante que de acuerdo con la ley solamente son tributables aquellos bienes muebles de un profesional consistentes de maquinaria movida mecánicamente y que por consiguiente, a su juicio, únicamente es tributable el renglón (b). [6 motores eléctricos]" y "3.—Que es la contención del demandado que es tributable cualquier equipo de trabajo de un profesional, para servirse del cual haya que usar en cualquier grado la electricidad o cualquier fuente motriz que no sea manual." A renglón seguido se pidió al tribunal de instancia que impartiese su aprobación a la referida estipulación. Así pues, ambas partes aceptaron que la exención era aplicable a los instrumentos de trabajo de un dentista, siempre que sean movidos o usados exclusivamente a mano. Y el Secretario de Hacienda en su alegato ante nos repite que ". . . el estatuto declara exentos de tributo los instrumentos profesionales que se usen sin que intervenga otro medio que no sea el manual." Como ya hemos demostrado antes, dicha interpretación del artículo 291 (i) es errónea.

Ahora bien, ninguna estipulación o admisión de las partes puede privar a un tribunal de su facultad de interpretar la ley. Por lo que se refiere a los hechos y a la prueba, el principio es que las estipulaciones de ordinario obligan tanto a las partes como al juez. Cf. *International General Electric Co.* v. *Buscaglia, Tes.*, 66 D.P.R. 258, 264–65 (1946); *Roca* v. *Thomson*, 77 D.P.R. 419, 431–33 (1954) y *Fernández* v. *Davidson*, 80 D.P.R. 253, 257 (1958). No obstante, frente a las normas jurídicas y a su interpretación el juez se halla en una posición muy distinta. Como el tribunal es por definición un órgano jurisdiccional conocedor del derecho y de su técnica, tiene la ineludible obligación de

buscar e interpretar la norma jurídica aplicable a la situación concreta que se le plantea. Además, existen obvias razones de orden público que impiden a los tribunales dictar fallos basados en normas erróneas de derecho, aunque éstas surjan de una estipulación suscrita por las partes. Síguese de aquí la consecuencia procesal de que las partes no vinculan al juez mediante las alegaciones, admisiones o estipulaciones que formulen sobre la existencia o interpretación de determinados preceptos de ley. O sea, que la función de hallar el derecho es privativa del juez y en virtud de esa facultad el tribunal está en libertad de aplicar la norma que estime pertinente y adecuada, aunque sea separándose de las alegaciones, admisiones o acuerdos de los litigantes. Tal es el criterio unánime de la doctrina jurisprudencial en los Estados Unidos. Véanse: *Estate of Sanford* v. *Commissioner*, 308 U.S. 39, 50–51 (1939); *Swift & Co.* v. *Hocking Valley Ry. Co.*, 243 U.S. 281, 289 (1917); *Burdette* v. *Rollefson Construction Co.*, 344 P.2d 307, 309–310 (Cal. 1959); *Davis* v. *Commissioner*, 241 F.2d 701, 703 (7º Cir. 1957); *Daugaard* v. *Hawkeye Security Insurance Co.*, 239 F.2d 351, 354 (8º Cir. 1956); *In re Milbourne*, 77 F.2d 310, 312 (2º Cir. 1935); *Bear River Paper & Bag Co.* v. *City of Petoskey*, 241 F. 53, 56 (6º Cir. 1917); Anotación en 92 A.L.R. 663 (1934); 83 C.J.S., *Stipulations*, sec. 10 (c). Un principio equivalente rige con mayor o menor pureza en casi todos los sistemas procesales modernos. Por ejemplo, en España se reconoce que en el proceso civil incumbe a las partes aportar los materiales de hecho y las pruebas, pero que como regla general toca al juez calificar los hechos jurídicamente y aplicar la norma jurídica adecuada, "sin vinculación a las partes en esta labor intelectual". Cf. Polaino Ortega, La Determinación de la Norma en el Proceso Civil, en Revista de Derecho Procesal (1960) 19–31; Prieto Castro, Manual de Derecho Procesal Civil, tomo I (1959) 247–254, 346–348; y De la Plaza, Derecho Procesal Civil Espa-

ñol, Vol. I (3ª ed. 1951) 309–322.(²)  Por ello, a nuestro juicio, carece en absoluto de eficacia la estipulación hecha por las partes, sobre el alcance y significación del art. 291(i).

■■  Desde que se inició este litigio la contención fundamental del Secretario de Hacienda siempre ha sido la misma: que ninguna de las propiedades tasadas está exenta de contribución.  Cierto es que adujo una justificación errónea para sostener su posición.  Pero nada hay que nos impida reconocer en grado de apelación o de revisión, a instancia de parte y aún de oficio, que en realidad existe otro fundamento de derecho válido y adecuado para sostener la contención básica planteada por el Secretario de Hacienda desde que comenzó este pleito.  Además, aunque la cuestión que ha surgido por primera vez en revisión pudiese calificarse como una "cuestión nueva", lo cierto es que la misma sólo envuelve un punto de derecho cuya solución basta para que dictemos un fallo final.  Por consiguiente no nos podríamos negar a considerarla y a resolverla sin faltar a nuestro deber esencial de impartir justicia y de hallar en cada litigio la verdad.  Nuestra jurisprudencia ha descartado el arcaísmo de que nunca puede variarse en apelación o en revisión la teoría del caso aducida ante el tribunal de instancia.  Por lo demás, se trata de una cuestión pura de derecho sobre el alcance y significación del artículo 291 (i), por lo cual no conduciría a nada argüir que la misma no fue planteada o resuelta por el tribunal de primera instancia.  Véanse *Piovanetti* v. *Vivaldi*, 80 D.P.R. 108, 120–123 (1957) y *Rossy* v. *Tribunal Superior*, 80 D.P.R. 729, 749–750 (1958). Cf. además *Burdette* v. *Rollefson Construction Co.*, 344 P.2d

(²) Nótese que, independientemente de las estipulaciones o admisiones que formulen las partes, en casi todos los procesos civiles caben las siguientes posibilidades: el demandante puede desistir del procedimiento, el demandado allanarse a lo solicitado, o ambas partes concluir una transacción.  Queda fuera del problema que aquí nos interesa examinar los requisitos y las limitaciones que impone el orden jurídico en Puerto Rico a estos actos procesales cuando su efecto sea dar por terminado el pleito *con sentencia* (a) en cuanto a todo el objeto del proceso, o (b) en cuanto a parte de él.

307, 309–310 (Cal. 1959) y *Raising New Issues on Appeal,* 64 Harv. L. Rev. 652 (1951).

Siendo esto así, es preciso aplicar a los hechos del caso la interpretación correcta y adecuada del artículo 291 (*i*) que ya hemos señalado más arriba. Y, por consiguiente, *debe revocarse la sentencia recurrida y declararse sin lugar la demanda.*

Los Jueces Asociados Sres. Belaval y Hernández Matos disintieron.

El Juez Asociado Sr. Santana Becerra no intervino.

Opinión concurrente del JUEZ PRESIDENTE SEÑOR NEGRÓN FERNÁNDEZ.

Estoy conforme con los fundamentos legales expuestos en la opinión del Tribunal y con el resultado a que llega. Creo, sin embargo, que un análisis comparado de las disposiciones pertinentes contenidas en los Artículos 291 (*l*) y 307 del Código Político, tal como fueron adoptados originalmente y subsisten en la actualidad, contribuye a comprobar que el alcance de la exención conferida por el 291 (*i*) fue, en el propósito legislativo, el de beneficiar y proteger únicamente a la clase de personas—mecánicos y artesanos—mencionados tanto en uno como en el otro de los dos artículos citados, que formando parte del mismo cuerpo legal fueron adoptados por la Asamblea Legislativa al mismo tiempo.