Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| IVONNE MARTÍNEZ CORDERO<br><br>Parte Apelante<br><br>v.<br><br>INTI GUARIONEX SANTIAGO NIEVES<br><br>Parte Apelada | KLAN202300928<br><br>Consolidado<br><br>KLAN202300931 | *Apelación*<br>Procedente de Tribunal de Primera Instancia, Sala de Caguas<br><br>Núm.: CG2021CV2513<br><br>Sobre: Liquidación de Comunidad de Bienes Post Gananciales |
|---|---|---|
| IVONNE MARTÍNEZ CORDERO<br><br>Parte Apelada<br><br>v.<br><br>INTI GUARIONEX SANTIAGO NIEVES<br><br>Parte Apelante | | *Apelación*<br>Procedente de Tribunal de Primera Instancia, Sala de Caguas<br><br>Núm.: CG2021CV2513<br><br>Sobre: Liquidación de Comunidad de Bienes Post Gananciales |

Panel integrado por su presidenta, la jueza Ortiz Flores, el juez Rivera Torres y la jueza Prats Palerm

*Prats Palerm, Jueza Ponente*

**SENTENCIA**

En San Juan, Puerto Rico, a 3 de abril de 2024.

Comparecen Ivonne Martínez Cordero (en adelante, ¨Sra. Martínez Cordero¨) e Inti Guarionex Santiago Nieves (en adelante, ¨Sr. Santiago Nieves¨) (en conjunto, ¨apelantes¨) mediante los recursos de apelación, KLAN202300928 y KLAN202300931, respectivamente, y solicitan que revoquemos una *Sentencia* emitida por el Tribunal de Primera Instancia, Sala de Caguas (en adelante, ¨TPI¨). Mediante el referido dictamen, el TPI declaró Con Lugar la *Demanda* sobre liquidación de bienes gananciales presentada por la Sra. Martínez Cordero.

Por los fundamentos que expondremos a continuación, se *Modifica en parte* y así modificada se *Confirma* la *Sentencia* apelada.

## I.

Los reclamos de los apelantes se originan el 1 de octubre de 2021, luego de que, disuelto el vínculo matrimonial entre las partes, la Sra. Martínez Cordero presentara ante el TPI una *Demanda* en la cual solicitó la liquidación de la comunidad de bienes post gananciales.

Surge de la *Demanda* que el Sr. Santiago Nieves y la Sra. Martínez Cordero contrajeron matrimonio el 17 de noviembre de 2001, bajo el régimen económico de la Sociedad Legal de Gananciales (en adelante, ¨SLG¨). El vínculo matrimonial quedó disuelto por la causal de ruptura irreparable mediante *Sentencia* dictada el 16 de mayo de 2017, en el caso Civil Núm. EDI2017-0118.

Atinente a la controversia ante nuestra consideración, la Sra. Martínez Cordero reclamó un crédito a su favor por la totalidad de lo pagado en beneficio de la SLG. Adujo que, durante la vigencia del matrimonio, ésta utilizó dinero privativo para el pago de deudas y obligaciones gananciales.

Específicamente, alegó que, previo al matrimonio, era dueña del Apartamento 301 del Condominio Paseo Degetau. Vigente el matrimonio, la demandante vendió el apartamento y arguyó que alrededor de $30,000.00, producto de la venta, fue utilizado para el pago de gastos y obligaciones de índole ganancial.

Además, sostuvo que recibió una donación de sus padres por la cantidad aproximada de $10,000.00. Por todo lo cual, reclamó un crédito por la aportación del referido dinero privativo al matrimonio.

Por su parte, el 26 de diciembre de 2021, el Sr. Santiago Nieves presentó su *Contestación a Demanda y Reconvención* en la cual adujo que, durante el proceso de divorcio, la Sra. Martínez Cordero sustrajo la suma de $ 87,835.00 depositada en la

Cooperativa de Ahorro y Crédito COPACA (en adelante, ¨COPACA¨). El Sr. Santiago Nieves alegó que dicha suma era de carácter ganancial y que la demandante retiró el dinero sin autorización de este.

Luego de varios trámites procesales, que no son necesarios pormenorizar para poder disponer de la controversia, el 14 de marzo de 2023, las partes presentaron el Informe de Conferencia con Antelación a Juicio (en adelante, ¨ICAJ¨). En lo aquí pertinente, las partes estipularon lo siguiente:

> 7. Cuando las partes se casaron, la demandante ya era dueña del Apartamento 301 en el Condominio Paseo Degetau, en Caguas.
>
> 8. Desde que las partes se casaron, dicho inmueble privativo fue el hogar conyugal de las partes, hasta el momento en que las partes adquieren el inmueble ganancial sito en la Urbanización Hacienda San José.
>
> **9. Vigente el matrimonio la demandante vendió el referido apartamento y el producto de la venta fue utilizado para el pago de gastos y/u obligaciones gananciales.**
>
> **10. Vigente en matrimonio la demandante recibió de sus padres una donación por la cantidad de $12,072.23.**
>
> 11. Vigente el matrimonio, el demandado aportó de su salario a su plan de retiro con el ELA, la cantidad de $36,443.83.
>
> 12. Vigente el matrimonio, la demandante aportó de su salario a su plan de retiro con Chr[y]sler, la cantidad de $40,530.00.
>
> 13. Desde que las partes se divorciaron y hasta la fecha de la firma de la presente, la demandante ha emitido pagos de la hipoteca del inmueble conyugal por la cantidad total de $105,261.28.[1] (Énfasis suplido).

El 8 de agosto de 2023, se celebró el juicio en su fondo. Posteriormente, el 10 de agosto de 2023, el foro primario dictó una *Sentencia*, notificada el 17 de agosto de 2023, en la cual declaró disuelta la comunidad post ganancial. El foro apelado determinó el

---

[1] Véase Apéndice de la Parte Apelante en el recurso KLAN202300928 a la pág. 21 (Informe de Conferencia con Antelación a Juicio).

valor de los activos en $395,859.01 y señaló como único pasivo la hipoteca que grava el inmueble de Hacienda San José. Además, le reconoció a la Sra. Martínez Cordero un crédito de $73,942.55 y al Sr. Santiago Nieves de $20,265.00

Sobre los créditos reclamados por la Sra. Martínez Cordero, surge de la *Sentencia,* que la demandante arguyó que el dinero producto de la venta del apartamento fue utilizado para la compraventa del inmueble ganancial de Hacienda San José. Al respecto, el foro primario concluyó que:

> [...] La prueba presentada, admitida y creída demostró que a la fecha en que los aquí litigantes compraron el inmueble en Hacienda San José la demandante aún no había vendido el susodicho apartamento; por lo que no contaba con el dinero de la venta cuando se emitió el pago de los $27,927.77. La demandante tampoco demostró haber recibido un adelanto del precio de venta del apartamento para la fecha en que compraron la propiedad en Hacienda San José. Tampoco presentó documentos que establecieran un tracto entre los $27,927.77 y el dinero obtenido de la venta del apartamento. **Tampoco presentó prueba que enlazara el dinero obtenido de la venta del apartamento con el pago de algún gasto y/u obligación de índole ganancial**. (Énfasis suplido).[2]

De igual manera, el foro primario determinó que la Sra. Martínez Cordero tampoco había presentado evidencia que conectara la donación de $12,072.23 recibida de sus padres con el pago de gastos, deudas, obligaciones o adquisiciones de carácter ganancial. Por tal razón, resolvió que no procedían los créditos reclamados.

Por otro lado, el TPI concluyó que tampoco procedía la concesión del crédito reclamado por el Sr. Nieves Santiago correspondiente a la suma retirada de la cuenta de COPACA. Particularmente, sostuvo que:

> [...] La prueba presentada, admitida y creída demostró que previo al matrimonio la demandante tenía una cuenta en la Cooperativa de Ahorro y Crédito COPACA. Que dicha cuenta pertenecía a la demandante. Por

---

[2] Véase Apéndice de la Parte Apelante en el recurso KLAN202300928 a la pág. 49 (Sentencia).

tanto, a la fecha en que las partes contrajeron matrimonio el dinero que existía en dicha cuenta era privativo de la demandante. **El demandado no presentó prueba para establecer cuánto había en dicha cuenta a la fecha en que contrajo nupcias con la demandante. Tampoco presentó prueba de que durante la vigencia del matrimonio se hubiese realizado depósitos en dicha cuenta. Ergo, el demandando no colocó en posición al Tribunal de determinar qué partida de los $87.825.00 que sostiene había en la Cooperativa de Ahorro y Crédito era de naturaleza ganancial, si alguna.** En consecuencia, no procede el crédito reclamado.[3] (Énfasis suplido).

Inconformes, el 1 de septiembre de 2023, las partes, respectivamente, presentaron mociones de reconsideración. El foro primario declaró No Ha Lugar las referidas mociones mediante dos (2) Resoluciones dictadas el 15 de septiembre de 2023 y notificadas el 18 y 19 de septiembre de 2023.

El 18 de octubre de 2023, la Sra. Martínez Cordero presentó un recurso de *Apelación Civil*, clasificado alfanuméricamente como KLAN202300928, y realizó el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al no adjudicar los créditos solicitados por la demandante en su Demanda, a pesar de los hechos estipulados por las partes en el Informe de Conferencia con Antelación a Juicio.**

Por su parte, el 19 de octubre de 2023, el Sr. Nieves Santiago presentó un recurso de *Apelación*, clasificado alfanuméricamente como KLAN202300931, y realizó el siguiente señalamiento de error:

> **Erró el Tribunal de Primera Instancia al no incluir la cantidad de $87,825.00 depositada en la cuenta de la Cooperativa de Ahorro y Crédito de Arecibo retirada y retenida por la demandante – apelada como parte de los bienes gananciales a liquidar entre las partes y al no adjudicarles el crédito por la suma de $43,912.50 de dicha cuenta al demandado apelante.**

En vista de que ambos recursos impugnan el mismo dictamen, ordenamos la consolidación de estos mediante *Resolución* emitida el 2 de noviembre de 2023.

---

[3] Véase Apéndice de la Parte Apelante en el recurso KLAN202300928 a la pág. 50 (Sentencia).

El 27 de noviembre de 2023, el Sr. Santiago Nieves presentó su alegato en oposición al recurso presentado por la Sra. Martínez Cordero.

Luego, el 5 de diciembre de 2023, la Sra. Martínez Cordero presentó su oposición al recurso presentado por el Sr. Santiago Nieves.

Perfeccionado el recurso y examinados los documentos que obran en el expediente, estamos en posición de resolver.

**II.**

**-A-**

Con el propósito de facilitar y simplificar la solución de controversias jurídicas, nuestro Tribunal Supremo ha reconocido la posibilidad de que las partes lleguen a estipulaciones para eliminar desacuerdos. En esencia, las *estipulaciones* son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas. *Díaz Ayala et. als. v. ELA*, 153 DPR 675, 693 (2001). En otras palabras, la *estipulación* constituye un acuerdo de las partes que litigan ante un Tribunal, sobre algún asunto o incidente del litigio. *Black's Law Dictionary*, 6ta Ed., West Pub. Co., St. Paul, 1990, pág. 1415. En esencia, estas son herramientas esenciales en las etapas iniciales del proceso judicial y su uso es promovido por las Reglas de Procedimiento Civil. *Rivera Menéndez v. Action Service*, 185 DPR 431, 439-440 (2012). Ahora bien, debido a que, por medio de las estipulaciones, se busca evitar dilaciones, inconvenientes y gastos, nuestro Tribunal Supremo promueve su uso, el cual está indisolublemente ligado al propósito de nuestro ordenamiento jurídico de lograr justicia rápida y económica. *Ramos Rivera v. ELA*, DPR 118, 126 (1999).

En nuestro ordenamiento jurídico se han reconocido tres tipos de estipulaciones. *Rivera Menéndez v. Action Service, supra.* La primera de éstas trata sobre las *admisiones de hechos* y tienen el

efecto de relevar a la parte del requisito de probarlos. Una vez un hecho es estipulado, este no puede ser impugnado. La *estipulación* del hecho, de ordinario, constituye una admisión de su veracidad y obliga tanto a las partes como al tribunal. *Rivera Menéndez v. Action Service. supra,* págs. 430-439. Mientras, la segunda clase de estipulaciones es la que reconoce derechos. *Rivera Menéndez v. Action Service,* supra, pág. 440. Por otro lado, la tercera clase de estipulaciones es aquella que trata sobre materias procesales, donde las partes pueden estipular la forma y manera en la que llevarán determinado curso de acción o el que se admita determinada prueba. *Rivera Menéndez v. Action Service, supra.*

Finalmente, es una norma de hermenéutica firmemente establecida que las estipulaciones deben ser interpretadas liberalmente, de manera consistente con la intención de las partes y el propósito de hacer justicia. En caso de duda, debe adoptarse aquella contención que sea más favorable a la parte a cuyo favor se hizo la estipulación. *Ramos Rivera v. ELA, supra,* pág. 126. Además, es preciso recordar que las estipulaciones obligan tanto al Tribunal como a las partes. *Rivera Menéndez v. Action Service,* supra; *Coll v. Picó,* 82 DPR 27, 36 (1960).

**-B-**

La Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, dispone que:

> Las determinaciones de hechos basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos.

Así pues, es norma reiterada en nuestro ordenamiento jurídico que los tribunales apelativos debemos brindarle gran deferencia al juzgador de los hechos, pues es éste quien se encuentra en mejor posición para evaluar la credibilidad de un testigo.

La tarea de adjudicar credibilidad y determinar lo que realmente ocurrió depende, en gran medida, de la exposición del juzgador de los hechos a la prueba presentada, lo cual incluye, ver el comportamiento del testigo y escuchar su voz, mientras ofrece su testimonio. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.*, 209 DPR 759 (2022). De ahí que, los tribunales apelativos no debemos intervenir con la apreciación de la prueba, la adjudicación de credibilidad y las determinaciones de hechos que realizan los tribunales de instancia, salvo que se demuestre que el juzgador actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto. *Íd*. Cuando la alegación es de pasión, prejuicio o parcialidad, el llamado a los foros apelativos es verificar, primordialmente, si el juzgador de los hechos cumplió con su función de adjudicar de manera imparcial. *Gómez Márquez et al. v. El Oriental Inc.*, 203 DPR 783, 793 (2020). Solo así podremos apoyar sus determinaciones de hechos. *Íd*. Por tanto, en ausencia de error manifiesto, prejuicio, pasión o parcialidad, no intervendremos con sus conclusiones de hechos y apreciación de la prueba. *Rivera Menéndez v. Action Services*, 185 DPR 431, 448 (2012); *Argüello v. Argüello*, 155 DPR 62, 78 (2001); *Ortiz v. Cruz Pabón*, 103 DPR 939, 946 (1975).

Por otro lado, constituye error manifiesto cuando, de un análisis de la totalidad de la evidencia, el foro apelativo se convence de que se cometió un error, independientemente de que exista evidencia que sostenga las conclusiones de hecho del Tribunal. *Íd*. De manera que, la facultad de los foros apelativos para sustituir el criterio de los tribunales de instancia se limita a aquellos escenarios, en los cuales, de la prueba admitida no surge base suficiente que apoye su determinación. *Robert Ortiz Ortiz v. Medtronic Puerto Rico Operations, Co.,* supra. Como se sabe, las diferencias de criterio jurídico no alcanzan dicho estándar. *Íd*.

Ahora bien, cabe destacar que, en ausencia de evidencia oral, el Tribunal de Apelaciones carece de los elementos para descartar la apreciación razonada y fundamentada de la prueba que realizó el Tribunal de Primera Instancia. *Hernández Maldonado v. Taco Maker,* 181 DPR 281, 289 (2011).

Como vemos, nuestro esquema probatorio está revestido de un manto de deferencia hacia las determinaciones de credibilidad que realizan los juzgadores de instancia, con respecto a la prueba testifical presentada ante sí. *Pueblo v. Arlequín Vélez,* 204 DPR 117, 146-147 (2020). La deferencia judicial al Tribunal de Primera Instancia está fundamentada en consideraciones de respeto y cortesía a las actuaciones de un foro que ha atendido de primera mano los pormenores del proceso y conoce las interioridades del caso, mejor que un tribunal de mayor jerarquía. Por ello, el Tribunal Supremo ha sido enfático en la norma de deferencia hacia las decisiones emitidas por los foros de primera instancia.

**III.**

Los apelantes solicitan que revoquemos la *Sentencia* del TPI mediante la cual se liquidó la participación de las partes en la extinta SLG. Ambos apelantes le imputan al foro primario la comisión de un solo error.

En primer lugar, la Sra. Martínez Cordero aduce que el foro apelado incidió al no reconocer los créditos solicitados en su Demanda. Particularmente, argumenta que en el Informe de Conferencia con Antelación a Juicio las partes estipularon el carácter privativo del dinero producto de la venta del apartamento y que, a su vez, fue utilizado para el pago de gastos y/u obligaciones gananciales.

Ciertamente, surge de las estipulaciones contenidas en el Informe que *el producto de la venta fue utilizado para el pago de*

*gastos y/u obligaciones gananciales.*[4] Luego de realizar la estipulación, únicamente procedía evidenciar la suma del producto de la venta para conceder el crédito a favor de la Sra. Martínez Cordero. A tales efectos, las partes presentaron la escritura de compraventa del inmueble privativo. Sobre el precio de compraventa y la suma retenida por las partes, el foro apelado dispuso que *[s]urge de la escritura de compraventa que en dicho acto entregaron a la vendedora un cheque por la suma de $27,927.77, reteniendo los esposos la suma de $101,072.23 para saldar la hipoteca que gravaba la propiedad.*[5]

No obstante, el foro apelado determinó que no procedía la concesión del crédito reclamado porque la Sra. Martínez Cordero no había presentado prueba que enlazara el dinero obtenido con el pago de algún gasto u obligación de índole ganancial. Las partes no venían obligadas a presentar prueba relacionada al uso del dinero para el pago de gastos gananciales porque su uso ya había sido estipulado. Resulta forzoso concluir que el foro primario erró al no concederle a la Sra. Martínez Cordero un crédito a su favor por la cantidad de $27,927.77, producto de la venta del inmueble privativo, ya que las partes habían estipulado que la suma fue utilizada para el pago de gastos y/u obligaciones de índole ganancial.

Por otro lado, la Sra. Martínez Cordero impugna la determinación del TPI de no concederle un crédito por la donación de $12,072.23 recibida de sus padres. Arguye que las partes estipularon que el dinero había sido utilizado para el pago de obligaciones gananciales. Surge del Informe que las partes estipularon su carácter privativo, pero no estipularon que la suma

---

[4] Véase Apéndice de la Parte Apelante en el recurso KLAN202300928 a la pág. 21 (Informe de Conferencia con Antelación a Juicio).
[5] Véase Apéndice de la Parte Apelante en el recurso KLAN202300928 a la pág. 48 (Sentencia).

donada hubiera sido utilizada para sufragar gastos u obligaciones de índole ganancial. Ante la falta de prueba que evidenciara su uso para el pago de gastos de carácter ganancial, no procedía que el foro apelado concediera el crédito a favor de la Sra. Martínez Cordero.

En segundo lugar, el Sr. Santiago Nieves arguye que incidió el foro primario al no reconocer el carácter ganancial de la cuenta de COPACA. Al respecto, el foro primario dispuso que la prueba presentada demostró que previo al matrimonio, la Sra. Martínez Cordero tenía una cuenta en la COPACA y que, al momento de contraer matrimonio, el dinero que existía en la cuenta era privativo de ésta. A su vez, determinó que el demandado no había presentado prueba que demostrara que durante la vigencia del matrimonio se hubieran realizados depósitos en dicha cuenta. Añadió que, el demandado no colocó al Tribunal en posición de determinar qué partida de los $87,825.00 depositados en la cuenta, si alguna, era de naturaleza ganancial.

Como normativa, los foros apelativos debemos deferencia a las determinaciones alcanzadas por los foros primarios, puesto que fue ante estos que testificaron las personas bajo juramento, ocasión que los puso en posición de auscultar gestos, expresiones, oír cambios de tonos, y ejercer la delicada función de adjudicar veracidad. A menos que se demuestre que el foro primario actuó movido por pasión, prejuicio o parcialidad o que incurrió en error manifiesto, no estamos en posición de intervenir con la apreciación de la prueba.

En el caso ante nuestra consideración, se celebró un juicio en su fondo en el cual testificaron las partes. Del mismo dictamen apelado surge lo siguiente:

> Aquilatada la prueba testifical y documental desfilada y admitida, habiendo escuchado, visto y observado la manera en que los testigos y peritos declararon, apreciado sus gestos, titubeos, contradicciones, manerismos, dudas y vacilaciones en la silla testifical, y la credibilidad que finalmente nos merecieron sus

testimonios, formulamos a las siguientes determinaciones de hechos y conclusiones de derecho.[6]

Sin embargo, no se presentó medio de transcripción oral alguno, ello a pesar de que los errores señalados por los apelantes tratan precisamente sobre el valor probatorio que el foro primario le concedió a la prueba documental y testifical presentada.

Por lo anterior, como foro revisor estamos impedidos de intervenir con la apreciación de la prueba. Mostraremos deferencia a las determinaciones realizadas por el foro primario sobre el carácter privativo de la cuenta de COPACA y el crédito reclamado por la Sra. Martínez Cordero por razón de la donación recibida de sus padres. Como tribunal apelativo no debemos descartar y sustituir las conclusiones de hecho bien ponderadas del foro de instancia ni la adjudicación de credibilidad que hizo el juzgador de los hechos.

## IV.

Por los fundamentos expuestos, se *Modifica en parte* la *Sentencia* apelada. El Tribunal deberá adjudicarle a la Sra. Martínez Cordero un crédito de $27,927.77 por el valor de la venta del inmueble privativo, según estipulado por las partes en el Informe de Conferencia con Antelación al Juicio. Así *Modificada*, se *Confirman* los demás aspectos de la *Sentencia* que no están relacionados con la venta del inmueble privativo.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Notifíquese.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[6] Véase Apéndice de la Parte Apelante en el recurso KLAN202300928 a la pág. 48 (Sentencia).