# 2006 DTA 69

**TRIBUNAL DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL III**

REAL LEGACY ASSURANCE COMPANY (ANTES ROYAL &
SUNALLIANCE INSURANCE (PUERTO RICO), INC.)
Recurrente

v.

COMISIONADO DE SEGUROS DE PUERTO RICO
Recurrido

Núm. KLRA-05-00667

San Juan, Puerto Rico, a 18 de abril de 2006

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
el Juez Aponte Hernández y el Juez Vivoni del Valle

Bajandas Vélez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

Comparece ante nos Real Legacy Assurance Company (la aseguradora o la recurrente) mediante el recurso de revisión de epígrafe. Nos solicita que revoquemos la resolución emitida por la Oficina del Comisionado de Seguros (Comisionado o el recurrido) el 17 de agosto de 2005 y notificada al próximo día. A través de ésta, la agencia confirmó una orden dictada por el Comisionado el 18 de marzo de 2004 en la que le ordenó a la

recurrente devolverle al Condominio Paseo del Príncipe la suma de $20,512 por concepto de una prima adicional cobrada por la recurrente durante el período comprendido entre el 5 de diciembre de 2001 al 5 de diciembre de 2002.

Examinados cuidadosamente y en su totalidad los escritos de las partes, los documentos que los acompañan, así como el derecho aplicable, resolvemos confirmar la resolución recurrida.

# I

El 18 de marzo de 2004, el Comisionado envió una carta a la aseguradora en la que le requirió que devolviera la prima adicional de $20,512 que le cobró al Condominio Paseo del Príncipe (Condominio) durante el período comprendido entre el 5 de diciembre de 2001 al 5 de diciembre de 2002. Mediante escritos de 7 de abril y 14 de junio de 2004, la recurrente solicitó la celebración de una vista. Luego de concedida la misma, el 8 de noviembre de 2004, la recurrente y el Comisionado informaron a la Oficial Examinadora designada que no existía controversia de hechos, por lo que la vista fue suspendida y las partes eventualmente sometieron el caso por el expediente y sus respectivos memorandos, ya que entendían que la controversia era estrictamente de derecho.

Según la resolución recurrida, los hechos que no están en controversia son los siguientes:

*"1. [La] Asegurador[a] está debidamente autorizad[a] por la OCS [Oficina del Comisionado de Seguros] para tramitar negocios de seguros en el Estado Libre Asociado de Puerto Rico.*

*2. El Sr. Héctor Berríos presentó ante la OCS una solicitud de investigación en torno a la póliza núm. CPP024109, emitida por el Asegurador al Condominio Paseo del Príncipe para el período comprendido entre el 5 de diciembre de 2001 y el 5 de diciembre de 2002.*

*3. Dicha solicitud de investigación, junto con el expediente de la investigación, se refirió a la División Actuarial de Seguro de Propiedad y Contingencia, a los fines de que se verificase si la prima cargada por [la] Asegurador[a], bajo la póliza núm. CPP024109, fue calculada conforme a la tarifa aprobada por la OCS al momento de emitir la póliza.*

*4. Mediante carta de 2 de julio de 2002, [la] Asegurador[a] presentó copia fiel y exacta de la referida póliza, junto con los endosos y las hojas de trabajo correspondientes.*

*5. La División Actuarial de Seguro de Propiedad y Contingencia evaluó los documentos de la investigación y encontró que para el período comprendido entre el 5 de diciembre de 2001 y 5 de diciembre de 2002, [la] Asegurador[a] cargó, bajo la sección de propiedad y mediante el endoso número 004, una prima adicional de $20,512.*

*6. Mediante la carta AM-IV-381 de 29 de mayo de 2003, la OCS le requirió a [la] Asegurador[a] informar a qué obedecía dicha prima adicional.*

*7. Mediante carta de 20 de junio de 2003, [la] Asegurador[a] solicitó una prórroga para presentar la información solicitada.*

*8. El 28 de agosto de 2003, la OCS aprobó la prórroga solicitada, indicándole a [la] Asegurador[a] que debía presentar la información solicitada mediante la carta AM-IV-381, en o antes del 5 de septiembre de 2003.*

*9. Vencido el término concedido por la OCS para que el Asegurador suministrase la antes mencionada*

*información, el 8 de septiembre de 2003, la OCS recibió vía facsímil copia de una carta suscrita por la presidenta de la Junta de Condóminos del Condominio Paseo de Príncipe, en la cual le indica al agente Mandry & Fingerhut, Inc. que aceptan la cotización de [la] Asegurador[a] para el período comprendido entre el 5 de diciembre de 2001 y el 5 de diciembre de 2002, por la cantidad de $56,539.*

*10. La comunicación de 8 de septiembre de 2003, no cumplió con la solicitud de información de 29 de mayo de 2003.*

*11. La póliza núm. CPP024109, emitida por el Asegurador, no se presentó a la OCS para su consideración y aprobación, a tenor con el Artículo 12.090 del Código de Seguros de Puerto Rico, 26 L.P.R.A. sec. 1209, a los fines de solicitar la autorización de la OCS para cobrar una compensación o prima en exceso de los tipos aprobados por la OCS para los seguros de propiedad para condominios.*

*12. Durante el período de vigencia de la póliza núm. CPP024109, la OCS no expidió orden ni promulgó regla o reglamento alguno, con el propósito de suspender o modificar los requisitos de presentación en cuanto a los tipos aplicables a los seguros de propiedad para condominios, como tampoco emitió orden alguna mediante la cual se suspendiese o modificase la efectividad de tales tipos.*

*13. Debido a que la póliza emitida al Condominio Paseo del Príncipe, para el período comprendido entre el 5 de diciembre de 2001 y el 5 de diciembre de 2002, nunca se presentó a la OCS para su consideración y aprobación, y a que [la] Asegurador[a] no cumplió con el requerimiento de información, el 18 de marzo de 2004, la OCS le requirió a [la] Asegurador[a] la devolución de la prima adicional cargada a la póliza."*

Así las cosas, el 17 de agosto de 2005, la Oficial Examinadora emitió su dictamen. Resolvió que procedía confirmar la determinación del Comisionado. La Examinadora concluyó que la aseguradora nunca solicitó autorización al Comisionado para cobrar una prima adicional distinta al tipo aprobado por la agencia, por lo que la recurrente estaba impedida de cobrar dicha prima tanto de forma provisional como permanente.

Inconforme, el 19 de septiembre de 2005, la asegurada acudió ante nos mediante el recurso de epígrafe y nos señala:

*"PRIMER ERROR: Erró la Oficina del Comisionado de Seguros al no reconocer el estado de derecho existente de deregulación de tipos de facto durante el período de vigencia de la póliza en controversia.*

*SEGUNDO ERROR: Erró la Oficina del Comisionado de Seguros al no aceptar que la Carta Normativa Núm. N-AM-II-10-2001 constituyó un reconocimiento de que el mercado de seguros de líneas comerciales estaba deregulado de facto.*

*TERCER ERROR: Erró la Oficina del Comisionado de Seguros al excluir los riesgos comerciales de condominios de la Carta Normativa Núm. N-AM-II-10-2001.*

*CUARTO ERROR: Erró la Oficina del Comisionado de Seguros al ordenar la devolución de primas en contra de sus actos propios que permitieron que el mercado de líneas comerciales se deregulan [sic] de facto.*

*QUINTO ERROR: Erró la Oficina del Comisionado de Seguros al intervenir tardíamente en un contrato de seguros válido, el cual ya había expirado a la fecha de la orden para la devolución de primas.*

*SEXTO ERROR: Erró la Oficina del Comisionado de Seguros al no desestimar el presente caso por carecer la agencia de un reglamento de adjudicación, lo que produce un menoscabo al debido proceso de ley y por existir un serio conflicto de intereses del oficial examinador."*

Luego de estudiado el recurso, el 26 de septiembre de 2005, le concedimos al recurrido el plazo de 30 días para que presentara su alegato de oposición. Después de concedida una prórroga, y conforme a lo ordenado, el Comisionado presentó su escrito el 19 de diciembre de 2005.

Teniendo el beneficio de las posiciones de ambas partes, pasamos a resolver.

## II

Sabido es que la función revisora de las decisiones administrativas concedidas a los tribunales apelativos se reduce a determinar si la actuación de la agencia está dentro de las facultades que le fueron conferidas por ley y si la misma es legal y razonable. *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70 (1999). De igual manera, los tribunales apelativos deben conceder gran deferencia a las decisiones administrativas en consideración de la vasta experiencia y conocimiento especializado que ésta posee. *Rivera v. A & C Development Corp.,* 144 D.P.R. 450 (1997).

La Ley de Procedimiento Administrativo Uniforme (L.P.A.U.) en su Sec. 4.5 delimita el alcance de la revisión judicial de las decisiones administrativas. La misma dispone que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obre en el expediente administrativo. No obstante, las conclusiones de derecho serán revisables en todos sus aspectos. 3 L.P.R.A. § 2175. Así pues, un tribunal apelativo tiene el deber de estudiar la totalidad del expediente y examinar si existe evidencia que sostenga la decisión de la agencia o si por el contrario, es incompatible con ésta. *Assoc. Ins. Agencies, Inc. v. Com. de Seg. P.R.,* 144 D.P.R. 425 (1997). Si la interpretación de los hechos es razonable, los tribunales, de ordinario, deben sostener el criterio de la agencia y no sustituirlo por el suyo. *Id.* Por el contrario, si el tribunal luego de un estudio y análisis ponderado descubre que se infringieron directamente valores constitucionales o la actuación administrativa fue arbitraria o irrazonable, el tribunal puede sustituir el criterio de la agencia por el suyo y revocar el dictamen administrativo. *Pérez Vélez v. VPH Motors Corp.,* 152 D.P.R. 475 (2000).

Así pues, el criterio rector para los tribunales, será la razonabilidad de la actuación de la agencia recurrida. Al finalizar su función revisora, el tribunal está compelido a considerar la especialización y experiencia de la agencia sobre los asuntos o materias que estuvieron ante su consideración. Por tanto, en el descargo de su función deberá caracterizar entre asuntos de discernimiento estatutario o cuestiones de especialización administrativa.

Por otro lado, en nuestra jurisdicción, el negocio de seguros es uno investido de sustancial interés público y, por tanto, ha sido reglamentado por el Estado. *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 D.P.R.881 (1994). Con esos fines, nuestra Legislatura aprobó la Ley 77 de 19 de julio de 1957, mejor conocida como el Código de Seguros de Puerto Rico, mediante la cual le concedió jurisdicción a la Oficina del Comisionado de Seguros para hacer valer sus disposiciones y le otorgó además amplios poderes para fiscalizar y reglamentar dicha industria. Rolando Cruz, *Derecho de Seguros,* **Publicaciones JTS,** 1999, Sec. 1.1, a la pág. 1.

En lo pertinente al recurso, el Código de Seguros exige que todo asegurador inscriba ante el Comisionado cada manual, listado o regla de los tipos a base de los cuales determinará las primas a cobrarse antes de usarlos en Puerto Rico. De esta manera, el Art. 12.050 del Código de Seguros, 26 L.P.R.A. § 1205 dispone:

*"Todo organismo tarifador y todo asegurador autorizado deberá inscribir ante el Comisionado, antes de usarlos en Puerto Rico, excepto como se dispone en la sec. 1209 de este título, cada manual de tipos, listas de tipos, clasificación de riesgo, plan tarifario, programa de líneas múltiples según definido mediante reglamentación y cualquier otra regla de tipos que adoptare o usare, así como cualquier otra información concerniente a la aplicación y cómputo de los tipos que fija y use, y toda modificación de cualquiera de los anteriores que se proponga usar."* (Énfasis suplido.)

La disposición antes transcrita responde al poder que tiene el Comisionado para reglamentar los tipos que deben prevalecer en Puerto Rico. Véase *Maryland Cas'y Co. v. San Juan Rac'g Assoc. Inc.*, 83 D.P.R. 559, 568 (1961). Dentro de este contexto, el término *"tipo"* significa aquella compensación a pagarse por un contrato de seguro. Art. 12.030 del Código de Seguros, 26 L.P.R.A. § 1203. Esta definición también incluye los elementos y los factores que sirvan de base para la determinación de dicha compensación. *Íd.*

Ahora bien, aunque la regla general requiere la inscripción de los tipos por parte de las aseguradoras, este requisito puede ser suspendido o modificado a discreción del Comisionado. El Art. 12.080 del Código de Seguros, 26 L.P.R.A. § 1208, preceptúa al respecto que:

*"El Comisionado, con arreglo a las reglas y reglamentos que adopte, podrá suspender o modificar mediante orden el requisito de presentación en cuanto a cualquier clase de seguro."*

El Código de Seguros también provee en su Artículo 12.090, 26 L.P.R.A. § 1209, un mecanismo para que aquellas aseguradoras que lo deseen puedan solicitarle al Comisionado que les permita utilizar un tipo en exceso al de la inscripción aplicable. El mismo reza de la siguiente manera:

*"§ 1209. Tipos recargados*

*A solicitud por escrito del asegurador, expresando las razones para ello, presentada al Comisionado y aprobada por éste, podrá usarse sobre cualquier riesgo específico un tipo en exceso del provisto por una inscripción que de otro modo sea aplicable.*

*Todo asegurador que se proponga utilizar sobre cualquier riesgo específico un tipo en exceso del provisto por una inscripción que de otro modo sea aplicable, deberá someter evidencia demostrativa, según determine el Comisionado, de que dicha cubierta no se ha podido obtener a tipos sin recargos de aseguradores autorizados a suscribir dicho riesgo.*

*El Código de Seguros permite a las aseguradoras, además, cobrar provisionalmente un tipo mayor al aprobado sin la previa autorización del Comisionado. Claro está, la aseguradora entonces estará obligada a someter la información relacionada con los nuevos tipos a la consideración del Comisionado dentro de los 30 días en que tal nuevo tipo se utilizó por primera vez. 26 L.P.R.A. § 1209."*

Por otra parte, se ha reiterado que el debido proceso de ley cuenta con dos vertientes: la sustantiva y la procesal. *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 562 (1992). La dimensión sustantiva del debido proceso de ley, persigue salvaguardar los derechos fundamentales de la persona. En su vertiente procesal, el aludido precepto le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad del individuo se haga a través de un procedimiento que en esencia sea justo, equitativo y de respeto a los individuos afectados. *Rodríguez Rodríguez v. E.L.A.*, supra, a la pág. 578; *López Vives v. Policía de Puerto Rico*, 118 D.P.R. 219, 231 (1987).

Para cumplir con el debido proceso de ley, en su dimensión procesal, la jurisprudencia ha establecido varios requisitos. Los mismos, deben ser satisfechos en todo procedimiento de índole adversativo. Son éstos a saber: a) la notificación adecuada del proceso; b) el proceso celebrado ante un juzgador imparcial; c) la oportunidad de ser oído; d) el derecho a contrainterrogar testigos y examinar la evidencia presentada en su contra; e) tener asistencia de abogado, y f) que la decisión se base en el expediente del caso. *López Santos v. Asociación de Taxis de Cayey*, 142 D.P.R. 109, 113-114 (1996); *Feliciano Figueroa v. Toste Piñero*, 134 D.P.R. 909, 914-915 (1993).

Específicamente en lo que respecta al debido proceso de ley en el ámbito administrativo, la L.P.A.U.

establece en la sección 3.13 (b), 3 L.P.R.A. § 2163(b) (2004), que:

*"El funcionario que presida la vista dentro de un marco de relativa informalidad ofrecerá a todas las partes la extensión necesaria para una divulgación completa de todos los hechos y cuestiones en discusión, la oportunidad de responder, presentar evidencia y argumentar, conducir contrainterrogatorio y someter evidencia en refutación, excepto según haya sido restringida o limitada por las estipulaciones en la conferencia con antelación a la vista."*

En el ámbito del derecho administrativo, aunque el debido proceso de ley no tiene la rigidez que se le reconoce en la esfera penal, sí se requiere un proceso justo y equitativo que respete la dignidad de los individuos afectados. *Torres Acosta v. Junta Examinadora de Ingenieros, Arquitectos y Agrimensores del ELA*, **2004 J.T.S. 71**, 161 D.P.R. (2004); *López Santos v. Asoc. de Taxis de Cayey, supra*, a la pág. 113; *López Vives v. Policía de Puerto Rico, supra*, a las págs. 230-231. *"...Después de todo, el debido proceso de ley encarna la esencia de nuestro sistema de justicia. Su prédica comprende los elevados principios y valores que reflejan nuestra vida en sociedad y el grado de civilización alcanzado...."*. *López Santos v. Asoc. de Taxis de Cayey, supra*, a la pág. 113. Véase además, *Marrero Caratini v. Rodríguez Rodríguez*, 138 D.P.R. 215 (1995).

### III

Por estar íntimamente relacionados, discutiremos en conjunto los primeros cuatro señalamientos de error aducidos por la recurrente. Es su contención principal que al momento en que se facturó la prima en controversia, el mercado de seguros de líneas comerciales en Puerto Rico se encontraba desreglamentado. Alega que este hecho fue evidenciado por el contenido de la Carta Normativa Núm. N-AM-II-10-2001 circulada por el Comisionado. Veamos.

La Carta Normativa Núm. N-AM-II-10-2001 de 21 de diciembre de 2001 dispone lo siguiente: ■

*"A tenor con las disposiciones del Artículo 12.080 del Código de Seguros de Puerto Rico, según enmendado, y con el propósito de promover la actividad económica de la industria de seguros en Puerto Rico y agilizar los procedimientos administrativos de esta Oficina, hemos determinado suspender los requisitos de presentación de tipos, dispuestos por los Artículos 12.050 y 12.060 del Código de Seguros de Puerto Rico, 26 L.P.R.A. secs. 1205 y 1206, para ciertas clases, subdivisiones o combinaciones de seguros. (Énfasis nuestro.)*

*...".*

Esta determinación es el resultado de una iniciativa de la Asociación Nacional de Comisionados de Seguros a la que se han unido otras jurisdicciones de Estados Unidos y que tiene como propósito principal la modernización de la reglamentación de la industria de seguros y la agilización de los procedimientos administrativos mediante la creación de procedimientos uniformes de evaluación y aprobación de formas y tarifas.

Como parte de esta iniciativa y con el fin de fomentar una sana competencia en la industria de seguros que redunde en beneficios al consumidor, a partir del 1 de enero de 2002, esta Oficina suspende los requisitos de presentación de los tipos de las clases, subdivisiones o combinaciones de seguros que a continuación se enumeran:

*"....*

*5. Seguros de propiedad sobre riesgos comerciales, excepto seguros para condominios".* (Énfasis suplido.)

Según la recurrente, esta carta reconoce que durante los años 1996 al 2001, el mercado de seguros no se

encontraba regulado por el Comisionado, ya que, entre otras razones, durante dicho período, la agencia no impuso una sola sanción por violaciones al Artículo 12.080 del Código de Seguros. Sobre este aspecto, concurrimos con la resolución recurrida en que *"[e]l supuesto estado de derecho que el Asegurador alega existía bajo la incumbencia de pasados Comisionados de Seguros, no puede prevalecer sobre el deber ministerial que obliga a la OCS a la observancia de la ley"*. ■ Ciertamente, es norma trillada que el hecho de que determinado precepto prohibitivo no sea puesto en vigor por el Ejecutivo, no equivale a su derogación, pudiendo su infracción ser perseguida y castigada en cualquier momento. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e Interpretación de las Leyes en Puerto Rico*, San Juan, **Publicaciones J.T.S.**, Inc., 2da ed., 1987, pág. 419; *Coll v. Picó*, 82 DPR 27, 36 (1960).

Por otro lado, conviene destacar que la recurrente no puede considerarse acreedora a los beneficios provistos por la Carta Normativa Núm. N-AM-II-10-2001 emitida por el Comisionado. Primero que todo, según los términos de ese documento, la suspensión del requisito de inscripción comenzaría a regir a partir del 1ro de enero de 2002. Sin embargo, la póliza en controversia fue renovada durante el mes de diciembre de 2001, por lo que en esos momentos se encontraba vigente el aludido requisito de inscripción. Además, la propia aseguradora en su recurso de revisión admite que *"cobró primas en exceso en este caso a las establecidas en el Manual de Líneas Comerciales para Condominios"*. ■

Por otra parte, advertimos de la Carta Normativa Núm. N-AM-II-10-2001 que el Comisionado excluyó de la suspensión de forma expresa a los seguros de condominios. Sobre este punto, la recurrente arguye que el Comisionado erró al no haber excluido este tipo de seguro. Sin embargo, luego de analizar el Artículo 12.080 del Código de Seguros, es forzoso concluir que según el diseño legislativo de la medida antes mencionada, la determinación en cuanto a qué tipo de seguro gozará del beneficio de la suspensión depende en su totalidad de la discreción del Comisionado, y por ende, este tipo de actuación se ubica fuera del ámbito de la revisión judicial. Véase, por analogía, *Federación de Maestros v. Molina Torres*, **2003 J.T.S. 168**.

A la luz del anterior análisis, resulta evidente que al momento en que la recurrente otorgó la póliza y cobró la prima en controversia, ésta no había sido eximida de inscribir ante la Oficina del Comisionado el nuevo tipo, que a todas luces, se desviaba de los tipos aprobados por el Comisionado. A pesar de ello, la recurrente no cumplió con su deber de solicitar la inscripción al Comisionado y tampoco utilizó los mecanismos provistos en el Código de Seguros para solicitar la aprobación de los tipos excesivos. En consecuencia, concluimos que no se cometieron los errores señalados.

En el quinto señalamiento de error, la recurrente alega que el Comisionado no puede intervenir con un contrato válido que ya había expirado. Esgrime que el Condominio aceptó voluntariamente la prima. Por su parte, el Comisionado argumenta que lo contratado por la aseguradora es contrario a lo dispuesto en el Capítulo 12 del Código de Seguros.

Nuestro ordenamiento jurídico ha establecido que en materia de contratos se le brinda gran libertad de acción a las partes que deseen obligarse, reconociéndose así la autonomía de la voluntad de los contratantes. Este principio permite que las partes contratantes establezcan los pactos, cláusulas y condiciones que tengan por convenientes siempre que no sean contrarias a las leyes, la moral y el orden público. Artículo 1207 del Código Civil, 31 L.P.R.A. § 3372.

Al interpretar el Artículo 1207 del Código Civil, que requiere que los contratos no sean contrarios al orden público, no se puede ignorar que el negocio de seguros está investido de un sustancial interés público. Por tanto, la voluntad de las partes debe ceder ante el interés del Estado en regular los tipos que deben prevalecer en Puerto Rico. No cabe duda de que la recurrente incumplió con los parámetros establecidos en el Código de Seguros relativos a la inscripción de la prima en exceso, por lo que el Comisionado válidamente puede intervenir con dicho contrato y conceder los remedios que correspondan. De igual manera, la investigación por

parte del Comisionado comenzó en el 2002, aún vigente la póliza, como así lo evidencia la carta de 2 de julio de 2002 en la que la recurrente remitió al Comisionado copia de la póliza del Condominio y sus endosos. En vista de todo lo anterior, no se cometió el quinto error apuntado.

Nos resta por atender el sexto señalamiento de error del recurso. La recurrente alega que la Oficina del Comisionado carece de un reglamento adjudicativo, lo que afectó su derecho a un debido proceso de ley. Arguye que la falta del mismo facilita que el proceso ante la agencia se preste a parcialidad y prejuicio. No tiene razón.

El 14 de noviembre de 1995, la Oficina del Comisionado derogó la Regla I del Reglamento del Código de Seguros de Puerto Rico. ▪ Dicha regla regulaba los procedimientos adjudicativos ante la agencia. ▪ El Comisionado dispuso que a partir de tal derogación, los procedimientos administrativos de la agencia serían dirimidos al tenor de la L.P.A.U. y su jurisprudencia interpretativa. Por lo tanto, nos corresponde determinar si la Oficina del Comisionado le brindó a la recurrente un debido proceso de ley con arreglo a los postulados antes mencionados.

De nuestro examen del expediente surge que la recurrente fue notificada adecuadamente de los cargos en su contra mediante la carta de 18 de marzo de 2004 remitida por la Oficina del Comisionado. En ésta, el Comisionado le explicó que la devolución de la prima responde a que la aseguradora no sometió la póliza en cuestión a la consideración previa de la agencia, y porque no respondió adecuadamente a la solicitud de información que le fuera cursada el 29 de mayo de 2003. A raíz de ello, la aseguradora solicitó una vista administrativa para dilucidar la procedencia de dicha orden, la cual fue concedida por la agencia. Fue luego de que las partes acordaran someter el caso por el expediente y a base de los memorandos de derecho que la Oficial Examinadora dejó sin efecto la vista previamente pautada. Como puede apreciarse, en este caso, la recurrente fue notificada adecuadamente de la determinación en su contra, y tuvo la oportunidad de defenderse y presentar la prueba que entendió pertinente ante la agencia.

Ahora bien, como parte de su argumento, la recurrente sostiene que la Oficial Examinadora no puede ser imparcial debido a la existencia de un conflicto de intereses. Aduce que dicha funcionaria es empleada de la Oficina del Comisionado y anteriormente fue miembro de la división legal de la agencia. No le asiste la razón.

Es norma reiterada que una mera alegación de parcialidad o prejuicio no es suficiente para sostener una reclamación de violación del debido proceso de ley, ya que para ello se requieren alegaciones fácticas específicas que indiquen la existencia de parcialidad o prejuicio. *Henríquez v. Consejo Educación Superior,* 120 D.P.R. 194, 210 (1987). El Tribunal Supremo ha reconocido que imputaciones de este tipo no deben descansar meramente en conclusiones, debido a que las decisiones de un organismo administrativo tienen a su favor una presunción de regularidad y corrección. *Íd.*

En el caso de autos, la recurrente no articula una alegación específica que sustente la alegación de parcialidad o prejuicio de parte de la Oficial Examinadora. Más bien, la aseguradora cuestiona la legitimidad del mecanismo establecido para llevar a cabo la vista administrativa ante la Oficina del Comisionado, en el cual la oficial examinadora es empleada de la agencia y anteriormente fungió como abogada en la división legal de ésta. Aduce que es necesario que éstos sean contratistas independientes. No obstante, debemos tener en cuenta que las decisiones de una agencia son de carácter institucional, y por ende, los jefes de agencia pueden delegar válidamente la autoridad de adjudicar a los empleados a su cargo, tal y como lo permite la L.P.A.U. 3 L.P.R.A. § 2113. Tanto la jurisprudencia como los estatutos contienen disposiciones que reconocen y legitiman que otros participen en el proceso de decidir. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* 2da. ed., Bogotá, Forum, 2001, pág. 186. Todo ello se debe a que a pesar de que el debido proceso de ley ofrece protección contra la arbitrariedad administrativa, en forma alguna es un molde rígido que prive de flexibilidad a los organismos administrativos. *López Vives v. Policía de P.R.,*

*supra*. No se cometió el último error señalado.

Al tenor de todo lo anterior, determinamos que la recurrente no nos ha puesto en posición de resolver que el Comisionado fue irrazonable y caprichoso al determinar que ésta tiene la obligación de devolver la prima en exceso cobrada al Condominio. Por tanto, concluimos que la decisión de la Oficina del Comisionado fue correcta, por lo que procede confirmar la Resolución recurrida.

## IV
Por los fundamentos expuestos, se confirma la resolución de la Oficina del Comisionado de Seguros emitida el 17 de agosto de 2005 y notificada al próximo día.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones

### ESCOLIOS 2006 DTA 69

1. Apéndice del recurso, págs. 50-51.

2. Apéndice del recurso, pág. 8.

3. Recurso de revisión, pág. 7.

4. Véase Expediente 5330 de 14 noviembre de 1995.

5. Según enmendada por el Reglamento de Procedimientos Adjudicativos, Expediente Núm. 4767 de 1ro de enero de 1958.