Opinión disidente emitida por el
Juez Presidente Señor Hernández Denton, a la cual se unen la Jueza Asociada Señora Fiol Matta y la Juez Asociada Señora Rodríguez Rodríguez.
Hoy la mayoría del Tribunal incurre en un acto manifiesto de legislación judicial con el propósito de limitar la facultad de este Foro —único de entronque constitucional y máximo intérprete de las leyes y de la Constitución— para solucionar las controversias que se encuentran ante su consideración. Específicamente, el Tribunal confecciona un mandato que cataloga como “legislativo”, pero que es realmente una creación judicial que ordena a este Foro abstenerse de resolver en sus méritos una controversia en todo caso en que revoquemos la determinación del Tribunal de Apelaciones, si éste se declara sin jurisdicción. Por entender que dicho proceder constituye una actuación ultra vires que establece una norma indebida de autolimitación judicial de este Tribunal y, a su vez, sujeta la verdadera controversia del caso de autos a ritualismos y tecnicismos pro *421 cesales que prolongan innecesariamente los casos, disentimos.
I
La relación de hechos que presenta este caso revela, sin duda, la verdadera “única controversia” que está ante la consideración del Tribunal: la incompatibilidad del procedimiento sumario de una acción de desahucio con una reclamación paralela de hogar seguro sobre el mismo bien inmueble. Veamos.
A. El caso de epígrafe se originó tras el divorcio del Dr. Oscar Crespo Quiñones y la Sra. Arlene Santiago Velázquez hace más de dos años. Conforme a la sentencia de divorcio, la señora Santiago Velázquez, quien es ama de casa, tendría la custodia de las hijas de las partes, hoy menores de edad. Al doctor Crespo Quiñones se le fijó una pensión alimentaria en beneficio de las menores y se le ordenó el pago de unas mensualidades a favor de la señora Santiago Velázquez, conforme a los términos de las capitulaciones matrimoniales suscritas entre ellos.
Desde el divorcio, la señora Santiago Velázquez ha residido en la propiedad que constituyó el hogar familiar, junto a las hijas procreadas durante el matrimonio y otra menor de edad hija suya. Este inmueble, en torno al cual gira la controversia en el caso de autos, es propiedad privativa del doctor Crespo Quiñones. A pesar de que las partes habían acordado vender dicha propiedad, no pudieron materializar el acuerdo, sino que se enfrascaron en un conflicto respecto a las alternativas de vivienda presentadas por cada uno. Por ello, el doctor Crespo Quiñones presentó una demanda de desahucio contra la señora Santiago Velázquez.
En su contestación a la demanda, la señora Santiago Velázquez admitió que la propiedad en controversia pertenecía al doctor Crespo Quiñones. Sin embargo, adujo que tenía derecho a reclamarla como hogar seguro, pues aún estaba pendiente ante la Sala de Relaciones de Familia la *422 determinación respecto al lugar donde viviría con las menores. Al ser así, el tribunal debía convertir la acción de desahucio a una acción ordinaria. El foro de instancia tomó conocimiento del expediente del caso ante la Sala de Relaciones de Familia. Luego de otros trámites, y tras concluir que se trataba de un asunto de derecho, el tribunal dictó sentencia por las alegaciones contra la señora Santiago Velázquez.
Inconforme con ese dictamen, la señora Santiago Velázquez acudió ante el Tribunal de Apelaciones. A petición del doctor Crespo Quiñones, dicho foro desestimó el recurso por falta de jurisdicción, dado que su ex esposa no prestó la ñanza en apelación requerida en casos de desahucio. Esto a pesar de que la señora Santiago Velázquez se opuso a dicha solicitud y argüyó que tanto la acción de desahucio como el requerimiento de la fianza, eran contrarias a la obligación alimentaria de su ex esposo a favor de sus hijas. Asimismo, adujo que debía ser exonerada de la prestación de la fianza por ser insolvente, ya que no generaba ingresos y su ex esposo le retenía las mensualidades pactadas. Cabe señalar que, mientras el asunto estaba pendiente en el Tribunal de Apelaciones, la señora Santiago Velázquez presentó ante la Sala de Relaciones de Familia una moción para que se declarara como hogar seguro la propiedad en controversia, por lo que pidió al foro apelativo que tomase conocimiento judicial de esta moción.
Ante la desestimación de su recurso apelativo, la señora Santiago Velázquez acudió ante nos y, en esencia, reprodujo los mismos argumentos esbozados ante el tribunal intermedio. Luego de que paralizáramos los procedimientos y le concediéramos un término al doctor Crespo Quiñones para que compareciera a mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la sentencia recurrida, éste compareció. Alegó que la señora Santiago Velázquez no es insolvente, pero admitió que retenía las referidas mensualidades y que aún estaba pendiente dilucidar a dónde se mudarían las menores.
*423 Mientras el presente recurso estaba ante nuestra consideración, el tribunal de instancia declaró el inmueble en controversia como un hogar seguro provisional. Posteriormente, tras la celebración de una vista final, el foro de instancia adjudicó como hogar seguro una propiedad distinta a dicho inmueble. La señora Santiago Velázquez acudió al Tribunal de Apelaciones mediante un recurso de certiorari para cuestionar dicha determinación. El referido recurso aún se encuentra pendiente ante el foro apelativo, que ordenó la paralización de los procedimientos.
B. Como se puede apreciar, este caso tiene la particularidad de que los mismos hechos dieron lugar al desarrollo de dos procedimientos paralelos e independientes sobre un mismo inmueble, a saber, un procedimiento sumario en el que se dilucida la procedencia de la demanda de desahucio que instó el doctor Crespo Quiñones, y otro procedimiento ordinario, en el que se ventila la reclamación de hogar seguro que presentó la señora Santiago Velázquez. Por ello, no debe perderse de vista que no estamos ante una demanda de desahucio común y corriente.
Por el contrario, se trata de una reclamación instada por un ex cónyuge contra otro quien, como consecuencia de los asuntos pendientes ante la Sala de Relaciones de Familia, permanece viviendo en el inmueble en controversia con las hijas menores de edad que ambos procrearon durante su matrimonio. Es decir, la acción de desahucio ante nuestra consideración es producto de los intentos infructuosos que realizaron las partes para llegar a un acuerdo respecto a la nueva vivienda de sus hijas menores de edad. Por lo tanto, mediante la referida acción realmente se pretende resolver, de forma sumaria, las controversias que las partes tienen pendientes ante la Sala de Relaciones de Familia. Tal pro-ceder constituye un uso indebido de los procesos judiciales que dilata la solución de estas controversias.
Desafortunadamente, la opinión mayoritaria se abstrae por completo de este marco fáctico y opta por enfrascarse en la creación de un “mandato legislativo” a todas luces *424 incompatible con las facultades de este Tribunal. Cuando menos, este Foro debió examinar la interrogante de si, en principio, la acción sumaria de desahucio en aquellos casos en los que se invoca una reclamación de hogar seguro con probabilidad de prevalecer sería contraria a la firme política pública de proteger a los menores y a la familia. Adviértase que, conforme al estado de derecho vigente, la acción de desahucio procederá en todo caso donde no haya conflicto de título, como ocurrió en el de autos. Ello no sólo le permitiría al padre demandante desahuciar a sus propios hijos del hogar en que han vivido gran parte de su vida sino que, además, acarrearía el absurdo resultado de autorizarle a evadir su obligación alimenticia hacia éstos.
A pesar de que estos asuntos debieron abordarse con rigor, la opinión del Tribunal enuncia con desmesurada atención al aspecto procesal una norma que responde más al automatismo y a la miopía judicial que a la precisión jurídica.
Dos aspectos requieren mayor atención de nuestra parte. En primer lugar, la opinión se ampara en un “esquema legislativo” —concebido por la propia mayoría del Tribunal— para resolver que es el Tribunal de Apelaciones “el foro que dispensa justicia apelativa en primer término”. Por ello, la mayoría expone que la única controversia que le corresponde resolver a este Tribunal en el caso de autos es si el foro apelativo intermedio tenía jurisdicción para revisar el recurso de apelación de la señora Santiago Velázquez. Contradictoriamente, la misma opinión convierte su norma de abstención en un claro “dictum”, pues tras contestar esa interrogante afirmativamente, se adentra en los méritos de la controversia y resuelve que en aquellos casos en que se reclame el derecho a hogar seguro sobre un bien objeto de una acción de desahucio, el foro de instancia deberá paralizar la consideración de la acción sumaria hasta que se dilucide el asunto sobre hogar seguro. Examinemos con detenimiento estos aspectos.
*425 II
AI amparo de varias disposiciones de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201 de 22 de agosto de 2003 (4 L.P.R.A. see. 24 et seq.), el Tribunal intenta derivar un supuesto “mandato legislativo” que limita nuestra autoridad para disponer de las controversias que se nos presenten. Sin embargo, no existe disposición alguna en dicha ley que nos permita suscribir la postura del Tribunal.
La opinión de la mayoría entiende necesario “resaltar” que nuestro sistema judicial es unificado, integrado en un Tribunal General de Justicia y compuesto por el Tribunal de Primera Instancia, el Tribunal de Apelaciones y este Tribunal. Expone, por si lo habíamos olvidado, el orden de presentación de un caso ante los foros judiciales: primero ante el tribunal de instancia, luego ante el tribunal apelativo y, por último, ante este Foro. Estas dos sencillas premisas —elementales en lo que se refiere a la jerarquía administrativa de la justicia en nuestro país— le bastan a la mayoría para idear un presunto “mandato legislativo” que establece al Tribunal de Apelaciones como el foro que dispensa justicia apelativa en primer término.
No obstante, un examen sosegado de las disposiciones de ley que cita el Tribunal sólo revela que el único “mandato legislativo” en lo que concierne al caso de autos ha sido regular nuestra facultad para entender en determinados asuntos, es decir, la competencia de este Foro. Nada hay en la ley que regule los procesos decisorios o limite las facultades de este Tribunal para formular soluciones sobre los asuntos que, conforme al estatuto, han sido traídos ante su consideración. Nada hay en la ley que nos dicte cómo resolver determinada controversia.
En definitiva, no podría ser de otra forma. El concepto “mandato legislativo” al que de manera forzada alude el Tribunal implicaría una actuación contraria a la doctrina de separación de poderes, la cual prohíbe la interferencia *426 de una rama constitucional de gobierno en los asuntos de otra. Colón Cortés v. Pesquera, 150 D.P.R. 724 (2000); Misión Ind. P.R. v. J.P., 146 D.P.R. 64 (1998). Aún más, atentaría contra uno de los pilares de dicha doctrina y principio trascendental de nuestro sistema democrático: la independencia del poder judicial frente a las ramas políticas del Gobierno.
La creación, la composición, el funcionamiento y las facultades de este Foro se consagran en nuestra Constitución, primera fuente de derecho procesal. Art. V, Secs. 1—7, Const. E.L.A., L.P.R.A., Tomo 1. Tanto el texto claro del Art. V de nuestra Constitución como el Diario de Sesiones de la Convención Constituyente, reflejan que la independencia judicial fue el criterio fundamental para lograr “la eficiencia del poder judicial como instrumento democrático del pueblo” y posibilitar la función de esta Rama de garantizar “un régimen de derecho a diferencia de un régimen de fuerza o de hombres”. (Enfasis suplido.) 1 Diario de Sesiones de la Convención Constituyente 452 (2003). Asimismo, es incuestionable que este Tribunal, como foro constitucional de última instancia, es el máximo intérprete de las leyes y de la Constitución y que, por ende, tiene la facultad exclusiva de pautar las normas jurisprudenciales en nuestra jurisdicción. Esa autoridad suprema no puede condicionarse a mandato legislativo alguno ni siquiera por fíat judicial, como hoy decide hacerlo la mayoría.
A tono con dichos principios, desde Coll v. Picó, 82 D.P.R. 27 (1960), este Tribunal estableció que “la función de hallar el derecho es privativa del juez y en virtud de esa facultad el tribunal está en libertad de aplicar la norma que estime pertinente y adecuada”. (Enfasis suplido.) Coll v. Picó, supra, pág. 37. Incluso, según resolvimos en aquella ocasión, lo anterior opera “aunque sea separándose de las alegaciones, admisiones o acuerdos de los litigantes”. Id. De forma similar, hemos señalado en innumerables ocasiones que al resolver un caso ante nuestra consideración, no tenemos que limitarnos a la evaluación de los errores señalados por las partes. Nuestra obligación es velar por *427 que se le haga justicia a aquella parte que, de acuerdo con nuestro más sano criterio, tiene derecho a ella. Vega v. Yiyi Motors, Inc., 146 D.P.R. 373, 383 (1998); Ríos Quiñones v. Adm. Servs. Agrícolas, 140 D.P.R. 868, 871 (1996); Rodríguez Cruz v. Padilla Ayala, 125 D.P.R. 486, 511-512 (1990). Por ello, en aras de impartir justicia, tenemos la facultad inherente de resolver errores patentes aunque las partes no los hayan señalado. Hons. Castro, Cabán v. Depto. de Justicia, 153 D.P.R. 302, 312 (2001).
De otra parte, la interpretación que hace la opinión del Tribunal sobre el Art. 2.001 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003 (4 L.P.R.A. sec. 24b), para equiparar las facultades del Tribunal de Apelaciones con las de este Foro, no guarda armonía alguna con el rango constitucional que pertenece de forma exclusiva al Tribunal Supremo de Puerto Rico. Al disponer que “el Tribunal General de Justicia está compuesto por un (1) foro de instancia y dos (2) foros revisores, a saber: el Tribunal de Apelaciones y el Tribunal Supremo”, se soslaya la naturaleza constitucional de este Foro y, por lo tanto, se desvirtúa el texto claro de la referida disposición. Lo que textualmente se expresa en ésta es que “[e]l Poder Judicial del Estado Libre Asociado de Puerto Rico ... [e]stará compuesto por el Tribunal Supremo como tribunal de última instancia, el Tribunal de Apelaciones como tribunal intermedio y por el Tribunal de Primera Instancia ...”. 4 L.P.R.A. sec. 24b. Ello es cónsono con las disposiciones pertinentes de nuestra Constitución. Art. V, Secs. 1, 2 y 3, Const. E.L.A., supra.
Ciertamente, la naturaleza de las funciones que realiza este Foro y las que realiza el Tribunal de Apelaciones son inherentemente distintas. Las funciones del Tribunal de Apelaciones, como foro intermedio, responden a las consideraciones particulares de la ley que lo creó. La propia ley de la Judicatura dispone que el Tribunal de Apelaciones “cumplirá el propósito de proveer a los ciudadanos de un foro apelativo mediante el cual un panel de no menos de tres (3) jueces revisará” los dictámenes que se establecen *428 en el estatuto. 4 L.P.R.A. sec. 24u. Esto con el objetivo de facilitar el acceso de la ciudadanía a los procesos judiciales, íd. Véase, además, 4 L.P.R.A. sec. 24w. Así lo reconoció este Tribunal en el marco de la anterior Ley de la Judicatura de Puerto Rico de 1994 (4 L.P.R.A. sec. 22 et seq.). Depto. de la Familia v. Shrivers Otero, 145 D.P.R. 351, 356 (1998).
A la luz de dicho propósito, hemos expresado que la función principal del foro apelativo intermedio es “revisar las decisiones del foro de instancia para asegurarse de que sean justas y que encuentren apoyo en la normativa establecida por este Tribunal”. Depto. de la Familia v. Shrivers Otero, supra, pág. 357. Entre las funciones de dicho tribunal se han reconocido las siguientes: corregir los errores del tribunal sentenciador; servir como agente catalítico en las revisiones de la doctrina y de la ley; advertir sobre problemas que plantee una ley; destacar situaciones que requieran reglamentarse por la Asamblea Legislativa; identificarle a este Tribunal las áreas en que se hace imperativo el cambio normativo; permitir que este Tribunal tenga un mayor desahogo y pueda servir al máximo en su función social de pautar e interpretar el Derecho, y ayudar en la descongestión de casos de este Tribunal. Id., págs. 356-357 y 357 esc. 2.
A pesar de la importante labor que, a través de dichas funciones, rinde el Tribunal de Apelaciones para nuestro sistema de justicia, la facultad de pautar y unificar el Derecho es exclusiva de este Foro. Con el mayor respeto a las funciones que realiza el Tribunal de Apelaciones, dicho foro es, según hemos expresado anteriormente, “ ‘un órgano instituido para administrar justicia a los particulares’ ”. (Enfasis suprimido.) Depto. de la Familia v. Shrivers Otero, supra, pág. 358, citando a J.A. Cuevas Segarra, Práctica procesal puertorriqueña: práctica apelativa (análisis del Reglamento del Tribunal de Circuito de Apelaciones), 2da ed. rev., San Juan, Pubs. J.T.S., 1995, pág. 23. En palabras del Ledo. Hiram Sánchez Martínez, ex Juez del antiguo Tribunal de Circuito de Apelaciones:
*429 El Tribunal de ... Apelaciones no existe para pautar el derecho, pues, esa función protagónica sólo incumbe al Tribunal Supremo. La función primordial del Tribunal de ... Apelaciones es corregir los errores que hubiese podido cometer el Tribunal de Primera Instancia al adjudicar un caso particular, concreto, de determinados litigantes sin pretensiones de obligarse a sí mismo o a otros jueces en otros casos a resolver de conformidad con lo resuelto en éste. El Tribunal de ... Apelaciones sólo existe para establecer la “ley del caso”. H. Sánchez Martínez, Práctica jurídica de Puerto Rico: derecho procesal apelativo, San Juan, LexisNexis, 2001, pág. 20.
De ahí que, como establece la propia ley de la Judicatura, las sentencias y resoluciones del Tribunal de Apelaciones sólo podrán citarse con carácter persuasivo. 4 L.P.R.A. sec. 24x.
Conforme a estos principios, resulta improcedente la teoría esbozada por la opinión del Tribunal a los efectos de que el legislador estableció un mandato que restringe nuestra facultad para proveer una solución adecuada a la controversia que nos atañe en el caso de autos. Ese mandato sólo existe porque lo ha promulgado la mayoría hoy, mediante una extrapolación de las disposiciones contenidas en la ley de la Judicatura sobre la competencia de este Tribunal.
De hecho, la decisión que emite el Tribunal en el caso de autos es contraria a su reciente actuación en Suárez Cáceres v. Com. Estatal Elecciones, 176 D.P.R. 31 (2009). Como expusimos en nuestros disensos en aquella ocasión, en Suárez Cáceres el señalamiento principal esbozado por el peticionario fue, precisamente, que el foro apelativo había incidido al desestimar su recurso por falta de jurisdicción. Sin embargo, aunque se revocó la determinación del tribunal apelativo sobre ese asunto jurisdiccional, una mayoría de este Foro no vaciló en ignorar el “mandato legislativo” en el cual hoy se basa la opinión del Tribunal y entró en los méritos de una controversia que jamás estuvo ante su consideración. En efecto, sin pretensión de consistencia en las decisiones de este Tribunal, la opinión emitida hoy invoca una norma incompatible con su proceder en dicho caso. Esta actuación —lejos de crear un estado de dere *430 cho— crea una incertidumbre peligrosa sobre el verdadero ratio decidendi de la mayoría del Tribunal. Peor aún, suscita la interrogante de si realmente la normativa pautada depende del resultado de la decisión.
III
A. Por otro lado, basta con examinar la opinión del Tribunal para notar que la norma de abstención proclamada no tarda en desvanecerse. Esto, pues aunque se ex-presa que la única controversia que debemos atender es la que se refiere a la jurisdicción del Tribunal de Apelaciones, el Tribunal le ordena a dicho foro consolidar este caso con el recurso de certiorari que presentó la señora Santiago Velázquez para impugnar la determinación de hogar seguro. De manera más contradictoria aún, el Tribunal resuelve que en aquellos casos en que la parte demandada en la acción sumaria de desahucio reclame el bien objeto de dicha acción como hogar seguro, el foro de instancia deberá paralizar la consideración del caso de desahucio hasta que se dilucide en la Sala de Relaciones de Familia el asunto del hogar seguro.
Dicho proceder ignora la naturaleza sumaria del procedimiento de desahucio, conforme a la cual, de no haber conflicto de título, procede declarar la acción “con lugar”. A nuestro juicio, según se colige de la jurisprudencia de este Foro sobre los procedimientos de desahucio, lo adecuado en los casos en que se presente una reclamación de hogar seguro sobre el inmueble objeto de la acción sumaria es que el juzgador ausculte los méritos de dicha reclamación y, discrecionalmente, traslade el caso a la Sala de Relaciones de Familia. Nos explicamos.
Como es sabido, el desahucio es una acción especial de carácter sumario, pues responde al interés gubernamental de atender prioritariamente la causa de acción de aquel titular que ve interrumpido su derecho a poseer y disfrutar un inmueble de su propiedad. 32 L.PR.A. see. 2821 et seq.; *431 Turabo Ltd. Partnership v. Velardo Ortiz, 130 D.P.R. 226, 234-235 (1992); Mora Dev. Corp. v. Sandín, 118 D.P.R. 733, 749 (1987). En vista de que lo único que se intenta recobrar mediante la referida acción sumaria es la posesión del inmueble, en reiteradas ocasiones hemos establecido que los conflictos de título no pueden dilucidarse en un procedimiento de desahucio. C.R.U.V. v. Román, 100 D.P.R. 318, 321 (1971); Negrón v. Corujo, 67 D.P.R. 398, 403 (1947); Escudero v. Mulero, 63 D.P.R. 574, 588 (1944). Existe tal conflicto cuando el demandado presenta prueba suficiente que tienda a demostrar su derecho a ocupar el inmueble en controversia y que tiene un título tan bueno o mejor que el del demandante. C.R.U.V. v. Román, supra, pág. 322. En esos casos, la controversia debe dilucidarse mediante un juicio ordinario. Lemar S.E. v. Vargas Rosado, 130 D.P.R. 203, 209-210 (1992).
De ordinario, la defensa de conflicto de título no debe extenderse a los casos en que el demandado, siendo precarista, no tiene posibilidad de título a su favor, por lo que debe demostrar que tiene al menos lo que hemos llamado un “color” de título. C.R.U.V. v. Román, supra, págs. 327-328; Lippitt v. Llanos, 47 D.P.R. 269 (1934). Sin embargo, en los casos apropiados hemos permitido a un demandado presentar defensas íntimamente relacionadas con la causa del desahucio, de forma tal que el procedimiento sea ordinario. Véanse: Jiménez v. Reyes, 146 D.P.R. 657 (1998); Turabo Ltd. Partnership v. Velardo Ortiz, supra; Mora Dev. Corp. v. Sandín, supra. En tales casos, nuestra decisión ha respondido a consideraciones o hechos específicos que generalmente no están presentes en los desahucios, los cuales han hecho necesaria una interpretación más amplia. Mora Dev. Corp. v. Sandín, supra, pág. 753. En este sentido, hemos señalado que “el criterio de defensas limitadas ... nunca tuvo a los ojos del juez un carácter absoluto”. íd., págs. 747-748.
No obstante lo anterior, la necesidad de convertir el procedimiento sumario en ordinario no puede ocasionar dilaciones innecesarias, por lo que el demandado deberá esta *432 blecer prima facie los méritos de su defensa. Mora Dev. Corp. v. Sandín, supra, pág. 750. Véanse, además: Marín v. Montijo, 109 D.P.R. 268 (1979); Brunet v. Corte, 45 D.P.R. 901 (1933). Tampoco puede redundar en la creación de una regla automática. Por ello, la guía en estos casos deberá ser el sano discernimiento judicial. Turabo Ltd. Partnership v. Velardo Ortiz, supra, pág. 241. Concretamente, una vez se esgrimen las defensas pertinentes, “el juzgador deberá auscultar sus méritos, los hechos específicos que se aducen y discrecionalmente ordenar la conversión del procedimiento al juicio ordinario”. (Enfasis suplido.) Id., págs. 245-246.
De lo anterior se deduce que, ante el estrecho marco provisto en nuestro ordenamiento para los pleitos de desahucio, hemos establecido que el sano discernimiento judicial será la mejor guía. A fin de cuentas, no debe perderse de vista que, como toda acción sumaria, el desahucio es un procedimiento diseñado para proveer un trato privilegiado al demandante, pues el legislador ha otorgado prioridad a la reivindicación de su derecho. Turabo Ltd. Partnership v. Velardo Ortiz, supra, pág. 234. Esto, sin embargo, no impide al juzgador matizar —en el ejercicio de su discreción— la rapidez procesal que caracteriza a estos procedimientos en aquellos casos en que declarar “con lugar” la acción sumaria sería contrario a un interés tutelado por el Estado. Véanse: Turabo Ltd. Partnership v. Velardo Ortiz, supra; Mora Dev. Corp. v. Sandín, supra.
Precisamente, en el caso de autos existe un interés de superior jerarquía que el Estado protege mediante la figura del hogar seguro: el bienestar y el mejor interés de los menores y de la familia. Véase Art. 109-A del Código Civil, 31 L.P.R.A. sec. 385a. Desde Carrillo v. Santiago, 51 D.P.R. 545, 547 (1937), reconocimos —con la equidad como criterio rector— que al padre custodio le cobija el derecho de reclamar como hogar seguro la propiedad ganancial mientras los hijos sean menores de edad. Esta norma fue reafirmada posteriormente en Cruz Cruz v. Irizarry Tirado, 107 D.P.R. 655 (1978), caso en el cual resolvimos que la preser *433 vación de la vivienda familiar supera el derecho de propiedad del cónyuge en los activos de la extinta sociedad ganancial. Esto, pues “el derecho de dominio no es atribución absoluta de su titular y ... está supeditado a intereses sociales de orden superior”. (Enfasis suplido.) Cruz Cruz v. Irizarry Tirado, supra, pág. 660.
En atención a estos intereses de política pública que guiaron nuestra jurisprudencia, hemos resuelto que el derecho a hogar seguro que contempla el Art. 109-A, supra, no sólo es atribuible a una propiedad ganancial. Este derecho puede atribuirse sobre una propiedad perteneciente a una comunidad de bienes, habida entre los ex cónyuges antes del matrimonio, y sobre la vivienda familiar constituida por un inmueble propiedad de uno de los ex concubinos, aun cuando le pertenezca de forma privativa. Candelario Vargas v. Muñiz Díaz, 171 D.P.R. 530 (2007); Rodríguez v. Pérez, 161 D.P.R. 637 (2004). Véase, además, Irizarry v. García, 58 D.P.R. 280, 284 (1941).
La ruptura del vínculo que unía a los padres —generado en virtud de una relación matrimonial o de concubinato— puede acarrear cierta inestabilidad respecto a la vivienda. Ante el riesgo de que los hijos se vean separados de lo que constituyó su residencia habitual, el centro de vida de la familia, el lugar que identifican como su entorno social y afectivo y, en muchos casos, la única propiedad que han conocido como su hogar, el derecho a hogar seguro opera como medida protectora para proveer a los hijos un ambiente familiar constante, continuo y estable.
Recientemente, en Candelario Vargas v. Muñiz Díaz, supra, dimos especial énfasis a la interpretación liberal y expansiva que hemos impartido al derecho a un hogar seguro, y catalogamos la vivienda familiar como un bien de goce colectivo al servicio de la familia. Allí resolvimos que el interés propietario que pueda tener un padre sobre la vivienda familiar que se reclama como hogar seguro no es un factor determinante cuando se dilucida si procede esta reclamación. Esto, pues la propiedad familiar trasciende aspectos patrimoniales, independientemente del origen del *434 inmueble o de la titularidad que sobre él se ostente. Es decir, “el bienestar de los hijos es un interés de mayor jerarquía que cualquier interés propietario que puedan tener los padres”. (Enfasis suplido.) Candelario Vargas v. Muñiz Díaz, supra, pág. 541.
A pesar de la preeminencia de los intereses antes reseñados, la naturaleza sumaria de la acción de desahucio no provee el marco procesal adecuado para vindicarlos. Ello implica que, en los casos en que se esgrime una defensa de hogar seguro con probabilidad de prevalecer, el trato privilegiado que goza el demandante en el trámite de desahucio da al traste con la firme política pública de proteger a los menores y a la unidad familiar. Ciertamente, se trataría de una controversia que no es susceptible de ventilarse en un procedimiento sumario. Véase Lemar S.E. v. Vargas Rosado, supra, págs. 209—210. Como mencionamos anteriormente, en ocasiones hemos flexibilizado el estrecho marco decisorio que rige las acciones de desahucio, ordenando la celebración de juicios ordinarios cuando hay intereses gubernamentales involucrados y siempre en atención a resultados justos. Véanse: Jiménez v. Reyes, supra; Turabo Ltd. Partnership v. Velardo Ortiz, supra; Mora Dev. Corp. v. Sandín, supra. En tales casos, la herramienta idónea para el juzgador es el discernimiento judicial. Véase Turabo Ltd. Partnership v. Velardo Ortiz, supra.
Creemos, por lo tanto, que una vez el padre custodio reclama el derecho a un hogar seguro en una acción de desahucio instada en su contra por el padre no custodio titular del inmueble, el juzgador deberá auscultar los méritos de esta reclamación y, discrecionalmente, trasladar el caso a la Sala de Relaciones de Familia. Es decir, el juzgador deberá determinar si de la faz de la reclamación de hogar seguro, la parte demandada podría prevalecer debido a la presencia de alguna de las circunstancias contempladas en el Art. 109-A del Código Civil, supra, a saber, que es padre custodio de hijos menores de edad, de hijos incapacitados o de hijos dependientes por razón de estu *435 dios hasta alcanzar veinticinco años de edad, y que el inmueble en controversia constituyó la vivienda familiar.
Contrario al curso de acción que adopta la opinión del Tribunal, la solución que proveeríamos a este asunto no desnaturaliza el carácter sumario de las acciones de desahucio y evita que se desarrollen dos procedimientos paralelos e inconsecuentes. El examen sobre los méritos de la reclamación de hogar seguro podría llevarse a cabo requiriendo la comparecencia oral o escrita de las partes en un plazo breve, de manera que no se dilate el procedimiento innecesariamente. Si se entiende que los criterios mencionados están presentes, el juzgador de instancia deberá trasladar el asunto a la Sala de Relaciones de Familia, de forma tal que dicha sala dilucide la controversia de forma plenaria. De lo contrario, procedería la continuación del procedimiento sumario.
B. En el caso de autos, consideramos que debido a la solicitud de hogar seguro de la señora Santiago Velázquez, y luego de tomar conocimiento del caso ante la Sala de Relaciones de Familia, el foro de instancia tuvo ante sí una reclamación de hogar seguro que, de su faz, cumple con los requisitos del Art. 109-A del Código Civil, supra. Ello era suficiente para apartar el ánimo del juzgador del rigor que caracteriza al trámite sumario de desahucio. Ante la alegación de la señora Santiago Velázquez, el foro de instancia debió, al menos, ordenar a las partes que se expresaran al respecto, aun en un término breve. No procedía, por lo tanto, decretar el desahucio sumario, tal como hizo el foro de instancia. Del mismo modo, tampoco procedía que el foro apelativo se declarase sin jurisdicción, pues ante la indigencia de la señora Santiago Velázquez debió eximírsele del requisito de prestar la fianza en apelación.
A la luz de todo lo anterior, y dado que durante el trámite de este recurso la Sala de Relaciones de Familia realizó una determinación sobre el derecho a hogar seguro solicitado que aún no es final y firme, expediríamos el auto de certiorari, revocaríamos la sentencia del Tribunal de *436 Apelaciones y desestimaríamos sin perjuicio la demanda de desahucio instada por el doctor Crespo Quiñones. Cabe aclarar que este curso de acción no pretende prejuzgar la controversia sobre la reclamación de hogar seguro, asunto que aún está pendiente ante los foros a quo.
Resulta incomprensible cómo hoy el Tribunal renuncia a su función de impartir justicia y —al amparo de un acto patente de legislación judicial— opta por imponerle una camisa de fuerza a nuestros procesos decisorios y a nuestra facultad de proveer soluciones adecuadas a los recursos que se encuentran ante nuestra consideración. Aunque la existencia del tribunal apelativo intermedio en nuestra jurisdicción ha generado varias legislaciones en tomo a su creación, sus funciones y sus facultades, la potestad de este Foro de llegar a las conclusiones que en derecho y en justicia procedan, ha permanecido incólume.
Peor aún, la mayoría parece desconocer el alcance de nuestras facultades como máximo y último Foro de nuestro país. Si bien el asunto principal que dio lugar al recurso ante nos versa sobre la procedencia de la desestimación decretada por el foro apelativo, lo cierto es que la verdadera controversia que nos ocupa gira en torno a la improcedencia de la acción sumaria de desahucio. El Tribunal se resiste a atender lo anterior, a tal punto que ignora que la señora Santiago Velázquez sí incluyó dicha controversia como una de las cuestiones jurídicas planteadas en su petición de certiorari, formulándola de la manera siguiente: “Si puede un padre ... con la obligación de proveer vivienda para sus hijas menores de edad, solicitar el desahucio de la madre custodia, y por ende, de éstas y puede exigirles el pago de una fianza.” Petición de certiorari, pág. 4.
Como bien reconoce la opinión del Tribunal, el “evitar la multiplicidad de pleitos” y “adjudicar en una causa las distintas reclamaciones de las partes” constituye un principio cardinal en nuestro ordenamiento procesal. No obstante, la decisión del Tribunal es contraria a dicho principio. Al devolver el caso de autos al foro recurrido, la mayoría decide postergar la solución de una controversia de estricto dere *437 cho, no resuelta aún, que no tardará en regresar a este Tribunal. Evidentemente, ello toma el complejo y delicado proceso en el que se han involucrado las partes en un proceso más oneroso, obligándolas a incurrir en gastos adicionales por recursos apelativos que sólo obedecen a un mandato legislado por el Tribunal y a una visión muy limitada de la función de este Foro.
En fin, nos vemos impedidos de suscribir un criterio que, amparado en tecnicismos procesales, relega a un segundo plano nuestro deber de proteger irnos intereses de superior jerarquía. Como no podemos refrendar un acto de legislación judicial que autolimita la facultad de este Tribunal para dispensar justicia con rapidez, disentimos.