Versión para imprimir



EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Wilfredo Rivera Menéndez<br><br>        Peticionario<br><br>            v.<br><br>Action Service Corp.<br><br>        Recurrido | Certiorari<br><br>2012 TSPR 73<br><br>185 DPR ____ |
| Action Service Corp.<br><br>        Peticionario<br><br>            v.<br><br>Wilfredo Rivera Menéndez<br><br>        Recurrido | |

Número del Caso: CC-2010-74
                    Cons.
                    CC-2010-82

Fecha: 13 de abril de 2012

Tribunal de Apelaciones:

        Región Judicial de Utuado, Panel XI
CC-2010-74

Abogado de la Parte Peticionaria:

        Lcdo. José Martínez Custodio

Abogado de la Parte Recurrida:

        Lcda. Olga Yolanda Cabrera Ramos
        Lcda. Martha L. Martínez Rodríguez

CC-2010-82

Abogada de la Parte Peticionaria:

        Lcda. Olga Yolanda Cabrera Ramos

Abogado de la Parte Recurrida.

        Lcdo. José Martínez Custodio

Materia: Despido Injustificado

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Wilfredo Rivera Menéndez<br><br>Peticionario<br><br>v.<br><br>Action Service Corp.<br><br>Recurrido<br>―――――――――――――――<br>Action Service Corp.<br><br>Peticionario<br><br>v.<br><br>Wilfredo Rivera Menéndez<br><br>Recurrido | CC-2010-74<br><br>Cons. con<br><br>CC-2010-82 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

En San Juan, Puerto Rico, a 13 de abril de 2012.

En el presente caso nos corresponde atender dos controversias. En la primera, debemos determinar cuáles son las consecuencias de que las partes en un pleito estipulen un expediente médico, sin ninguna declaración adicional sobre los fines de esa estipulación. Por su parte, en la segunda controversia debemos resolver si erró el Tribunal de Apelaciones al determinar que un empleado no fue despedido como represalia por reportarse a la Corporación del Fondo del Seguro del Estado para recibir beneficios por un accidente ocurrido en el trabajo.

I.

El Sr. Wilfredo Rivera Menéndez comenzó a trabajar en el 2006 como empleado de mantenimiento de la compañía Action Service, Corp. (Action). Sus funciones se concentraban en realizar labores de limpieza en el Edificio Cortés y en las instalaciones de la Puerto Rico Telephone Company (P.R.T.C.), ambos ubicados en el municipio de Utuado.[1] En el ejercicio de dichas funciones, el 24 de agosto de 2006 el señor Rivera Menéndez sufrió un accidente laboral.[2] Por ello, el 29 de agosto de 2006 reclamó a la Corporación del Fondo del Seguro del Estado (C.F.S.E.) y, tras evaluar su situación, le ordenaron recibir tratamiento médico en descanso. Posteriormente, el 3 de octubre de ese mismo año, la C.F.S.E. examinó nuevamente al señor Rivera Menéndez y determinó que este podía continuar con el tratamiento mientras trabajaba. Sin embargo, a pesar de los múltiples requerimientos para que le devolvieran su empleo, entre ellos una carta con fecha de 14 de noviembre de 2006, Action no reinstaló al señor Rivera Menéndez en su trabajo como empleado de mantenimiento.

Ante tales circunstancias, el 9 de febrero de 2007 el señor Rivera Menéndez presentó una demanda en el Tribunal de Primera Instancia, Sala Superior de Utuado. Su acción se sustentó en reclamaciones al amparo de la Ley Núm. 45 del

---

[1] Apéndice de la Petición de *certiorari* presentada por Action, pág. 159.

[2] El accidente se produjo cuando un compañero de trabajo del señor Rivera Menéndez lo roció accidentalmente en varias ocasiones con un detergente (Doctor Mecánico). Ello provocó que la salud del señor Rivera Menéndez se afectara por la inhalación de esa sustancia química.

18 de abril de 1935, según enmendada, "Ley de Compensaciones por Accidentes del Trabajo", 11 L.P.R.A. sec. 1 *et seq.*; la Ley Núm. 115 del 20 de diciembre de 1991, conocida como la "Ley de Acción por Represalia del Patrono", 29 L.P.R.A. sec. 194 *et seq.* (Ley Núm. 115); y de la Ley Núm. 80 de 30 de mayo de 1976, "Ley de Despido Injustificado", 29 L.P.R.A. sec. 185 *et seq.*

En la demanda, el señor Rivera Menéndez alegó que fue despedido injustamente por su patrono y en represalia por haber acudido a recibir tratamiento ante la C.F.S.E. Por consiguiente, solicitó ser restituido en su empleo y que se le pagaran los salarios dejados de recibir, las angustias mentales, los beneficios marginales y los honorarios de abogado. El 21 de marzo de 2007 Action contestó la demanda. Alegó que cuando el peticionario solicitó la reinstalación en su empleo se le ofreció ser reinstalado como empleado de mantenimiento, pero en un edificio de la P.R.T.C. radicado también en el Municipio de Utuado. Action, además, negó que el peticionario fuera despedido en represalia por haber acudido a recibir tratamiento en la C.F.S.E. y arguyó que este no fue despedido, sino que abandonó su empleo.

Cardinal a la controversia que nos ocupa es el hecho de que, como parte del proceso judicial, las partes estipularon como prueba documental el expediente del señor Rivera Menéndez en la C.F.S.E. En ese expediente consta un formulario de declaración voluntaria y una declaración jurada, ambas cumplimentadas y firmadas alegadamente por el

señor Rivera Menéndez, en las que declaró que trabajaba 29 horas semanales (7 horas los lunes, miércoles y viernes, y 4 horas los martes y los jueves).[3]

Así las cosas, el 19 de febrero de 2009 se celebró la vista en su fondo. De las determinaciones de hechos realizadas por el Tribunal de Primera Instancia, surge que entre las personas que testificaron se encontraba la Sra. Nitzaydee Avilés, gerente de recursos de Action. La señora Avilés testificó que al señor Rivera Menéndez se le ofreció empleo en el edificio de la P.R.T.C. pero se rehusó a aceptarlo. Además, señaló que el señor Rivera Menéndez trabajaba 29 horas semanales. Sin embargo, el tribunal de instancia no le brindó credibilidad a lo expuesto por la señora Avilés en el sentido del ofrecimiento de empleo ya que no pudo armonizar su aseveración con la carta del señor Rivera Menéndez, admitida en evidencia, en la que solicitaba su reinstalación para el mismo tiempo. El tribunal tampoco le dio credibilidad al testimonio de la señora Avilés sobre las horas trabajadas, porque esta nunca produjo las nóminas firmadas por el señor Rivera Menéndez. Por su parte, el señor Rivera Menéndez, testificó, entre otras cosas, que trabajaba 40 horas semanales.

Luego de escuchar a los testigos y de evaluar la prueba documental presentada por las partes, el Tribunal de Primera Instancia dictó sentencia el 5 de junio de 2009. En esta, determinó que el peticionario fue despedido

---

[3] Apéndice de la Petición de *certiorari* presentada por el señor Rivera Menéndez, págs. 94 y 98.

injustificadamente por haber acudido a la C.F.S.E. y que le cobijaban, entre otros remedios, los concedidos a la luz de la Ley Núm. 115. Con relación a las horas que el señor Rivera Menéndez trabajó, el Tribunal de Primera Instancia realizó el cálculo de la compensación basándose en una jornada de 40 horas semanales. En específico, el tribunal concedió la compensación siguiente: $35,845.90 por los salarios dejados de percibir y beneficios marginales; así como $5,000 por las angustias mentales, que sumaron $40,845.90. Conforme a la Ley Núm. 115, esa cantidad se duplica como penalidad, por lo que el tribunal elevó la compensación a $81,691.18, más el 25% por concepto de honorarios de abogado, costas e interés legal por cantidad de $20,422.80.

El 24 de julio de 2009 Action acudió mediante recurso de apelación ante el Tribunal de Apelaciones. Alegó que el Tribunal de Primera Instancia erró al determinar que el señor Rivera Menéndez fue objeto de represalias. Añadió que incidió ese Foro al calcular los honorarios de abogado concedidos y al descartar la prueba documental estipulada por las partes. Asimismo, expuso que se equivocó también al calcular las partidas de ingresos dejados de devengar que incluía una jornada de trabajo mayor a la que el empleado tenía (40 horas en vez de 29).

El 20 de noviembre de 2009 el Tribunal de Apelaciones emitió sentencia. Concluyó que el despido del señor Rivera Menéndez, aunque injustificado y en contravención con el

Art. 5-A de la Ley Núm. 45, *supra,* no fue en represalia por acudir a la C.F.S.E. Por otro lado, ese tribunal le brindó deferencia a la apreciación de los testimonios orales aquilatados por el Tribunal de Primera Instancia en cuanto a la jornada de trabajo y sostuvo que la compensación debía calcularse a base de una jornada semanal de 40 horas. El 23 de diciembre de 2009 el Tribunal de Apelaciones notificó una Resolución en la que declaró No Ha Lugar a la moción de reconsideración presentada oportunamente por el señor Rivera Menéndez.

Inconformes, tanto el señor Rivera Menéndez como Action, presentaron sendas peticiones de *certiorari* ante este Tribunal en los que solicitaron la revisión de la sentencia del Tribunal de Apelaciones.

En el recurso CC-10-0082 Action señaló la comisión del error siguiente:

> ERRÓ EL HONORABLE TRIBUNAL DE APELACIONES AL SOSTENER LA DETERMINACIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA DE DESCARTAR LA PRUEBA DOCUMENTAL ESTIPULADA POR LAS PARTES Y CALCULAR LAS PARTIDAS DE INGRESOS DEJADOS DE DEVENGAR INCLUYENDO UNA JORNADA DE TRABAJO MAYOR A LA QUE EL EMPLEADO TENÍA.

Por otra parte, en el recurso CC-10-0074, el señor Rivera Menéndez señaló la comisión del error siguiente:

> ERR[Ó] EL HONORABLE TRIBUNAL DE APELACIONES AL DETERMINAR, EN SU SENTENCIA, QUE EL DESPIDO DE LA PARTE RECURRENTE AUNQUE INJUSTIFICADO Y EN CONTRAVENCI[Ó]N CON EL ART. 5-1 DE LA LEY N[Ú]M. 45, NO FUE EN REPRESALIA POR ACUDIR AL FONDO DEL SEGURO DEL ESTADO.

Posteriormente, el señor Rivera Menéndez presentó una "Moción solicitando consolidación de recursos de *certiorari*". El 11 de enero de 2011 emitimos una resolución en la que ordenamos que se consolidaran los recursos por tratarse ambos del mismo pleito, y a su vez, expedimos. El peticionario y Action presentaron sus alegatos el 24 de septiembre de 2010 y 29 de noviembre de 2010, respectivamente. Así, con el beneficio de ambas comparecencias, procedemos a resolver.

II.

Pasemos a considerar el planteamiento de Action que sostiene que erró el Tribunal de Apelaciones al descartar una prueba estipulada y rendirle deferencia al Tribunal de Primera Instancia.

A. Las estipulaciones

Las estipulaciones son admisiones judiciales que implican un desistimiento formal de cualquier contención contraria a ellas.[4] Estas son favorecidas en nuestro ordenamiento porque eliminan desacuerdos, y de esa forma, facilitan y simplifican la solución de las controversias jurídicas.[5] Por ello, las estipulaciones son herramientas esenciales en las etapas iniciales del proceso judicial y su uso es promovido por las Reglas de Procedimiento Civil.[6]

---

[4] Mun. de San Juan v. Prof. Research, 171 D.P.R. 219, 238 (2007); P.R. Glass Corp. v. Tribunal Superior, 103 D.P.R. 223, 231 (1975).

[5] Díaz Ayala *et al.* v. E.L.A., 153 D.P.R. 675, 693 (2001).

[6] Véanse, por ejemplo, las Reglas 37.2, 37.4 y 37.5 de Procedimiento Civil, 32 L.P.R.A. Ap. V.

En nuestra jurisdicción hemos reconocido tres clases de estipulaciones: (1) las que constituyen admisiones de hechos y dispensan del requisito de probarlos; (2) las que reconocen derechos y tienen el alcance de una adjudicación; y (3) las que proponen determinado curso de acción, como por ejemplo, que se celebre una conferencia con antelación al juicio, que se someta una cuestión a un comisionado especial, o para que se admitan determinadas pruebas.[7]

La primera clase, por lo visto, trata sobre las estipulaciones de hechos. Estas tienen el efecto de dispensar el requisito de probar tales hechos. Es decir, cuando se admite o estipula un hecho, la parte está relevada de probarlo.[8] En esas situaciones, la estipulación sustituye la prueba que se presentaría en la vista del caso.[9] Una vez estipulado un hecho, la parte no puede impugnarlo posteriormente.[10] La estipulación de un hecho, como regla general, constituye una admisión sobre su veracidad y obliga tanto al tribunal como a las partes.[11]

Como segunda clase, está la estipulación que tiene el efecto de poner fin a un pleito o a un incidente dentro de este. En ese tipo de casos, hemos resuelto que esa

---

[7] Mun. de San Juan v. Prof. Research, *supra*, pág. 238; P.R. Glass Corp. v. Tribunal Superior, *supra*, pág. 230.

[8] Díaz Ayala *et al.* v. E.L.A.*, supra*; Sepúlveda v. Depto. de Salud*, 145 D.P.R. 560, 571 n. 11 (1998); Regla 5.2 de Procedimiento Civil, 32 L.P.R.A. Ap. III, R. 5.2.

[9] Mora Dev. Corp. v. Sandín, 118 D.P.R. 733, 752 (1987); Vda. de Rivera v. Pueblo Supermarkets, 102 D.P.R. 134, 139 (1974).

[10] Maldonado v. Consejo de Titulares, 111 D.P.R. 427, 434-435 (1981).

[11] Coll v. Picó, 82 D.P.R. 27, 36 (1960).

estipulación obliga a las partes y tiene el efecto de cosa juzgada.[12] Incluso, esa clase de estipulación podría catalogarse como un contrato de transacción si cumple con los requisitos de ese tipo de contrato.[13] Ello, porque no toda estipulación implica necesariamente la existencia de un contrato de transacción.[14]

Por otro lado, la tercera clase de estipulación es la que trata sobre materias procesales. La Regla 26 de Procedimiento Civil, 32 L.P.R.A. Ap. III R. 26, por ejemplo, contempla que las partes puedan estipular la forma y manera de tomar deposiciones, así como la modificación del procedimiento para cualquier otro mecanismo de descubrimiento de prueba. Asimismo, como ya hemos expuesto, las partes en un pleito pueden estipular la admisión de determinada prueba, entre otros asuntos.[15]

Ahora bien, a base de la controversia que nos ocupa, debemos aclarar que entre los asuntos procesales que pueden estipularse también se permite la autenticación de evidencia. La Regla 901 de Evidencia, 32 L.P.R.A. Ap. VI, dispone el requisito de autenticación como condición previa a la admisibilidad de evidencia. A esos efectos, el inciso

---

[12] Mun. de San Juan v. Prof. Research, *supra*; Rodríguez Rosado v. Zayas Martínez, 133 D.P.R. 406, 410 (1993); Magee v. Alberro, 126 D.P.R. 228, 232 (1990); Negrón Rivera y Bonilla, Ex Parte, 120 D.P.R. 61, 74 (1987); Sucn. Román v. Shelga Corp., 111 D.P.R. 782, 786-787 (1981); P.R. Glass Corp. v. Tribunal Superior, *supra*, 231. Véase, además, Art. 1709 del Código Civil, 31 L.P.R.A. sec. 4821.

[13] Mun. de San Juan v. Prof. Research, *supra*.

[14] Íd.

[15] P.R. Glass Corp. v. Tribunal Superior, *supra*.

(B) de esa regla establece un listado de los métodos que se pueden utilizar para realizar la autenticación. No obstante, la propia Regla 901, *supra*, establece que dicho listado no es taxativo, por lo que la autenticación no tiene que realizarse mediante un método específico.[16]

Precisamente, en el comentario a la Regla 901 que realizó el Comité Asesor Permanente de Reglas de Evidencia se confirma que la autenticación de evidencia puede lograrse mediante la estipulación o admisión de las partes.[17] En ese comentario, incluso se cita como base análoga el comentario a la Regla 901 Federal en la que se promueve el uso de la estipulación para autenticar como forma de agilizar los procesos.[18] Es decir, dentro del tercer tipo de estipulaciones (las procesales), podemos incluir la autenticación de evidencia. Ello es cónsono, no solo con la normativa general que promueve el uso de las estipulaciones como herramientas de simplificación procesal, sino además, con nuestras Reglas de Procedimiento Civil.

Así, una vez se estipula la autenticación de una evidencia, las partes están imposibilitadas de controvertir su <u>autenticidad</u>. En otras palabras, para fines del proceso judicial, la evidencia es lo que se dice que es. Sin

---

[16] <u>Pueblo v. Santiago Feliciano</u>, 139 D.P.R. 361, 424 (1995).

[17] Secretariado de la Conferencia Judicial y Notarial, <u>Informe de las Reglas de Derecho Probatorio</u>, San Juan, Tribunal Supremo de Puerto Rico, 2007, pág. 626.

[18] Íd.

embargo, es importante señalar que la estipulación sobre autenticación de evidencia no debe confundirse con la estipulación de hechos. La primera, a menos que las partes clara y expresamente dispongan lo contrario, solo releva del proceso de autenticar esa evidencia.

B.

Como ya hemos expuesto, las estipulaciones tienen distintos efectos y propósitos, por tanto, <u>las partes deben establecer con claridad su alcance</u>. En lo pertinente al caso de autos, debemos establecer qué efectos tiene la sola estipulación de un expediente médico (de la C.F.S.E.) sin ninguna expresión adicional sobre el alcance de dicha estipulación.

En su recurso, Action arguye que erró el Tribunal de Apelaciones al rendir deferencia a la decisión del foro primario que concluyó que la indemnización que debía recibir el empleado se calcularía a base de una jornada de trabajo semanal de 40 horas. Ello, porque consideró que el foro primario llegó a esa conclusión a pesar de que existía prueba documental estipulada por las partes de la que surgía que el empleado trabajaba 29 horas semanales. No le asiste la razón. Veamos.

De entrada, es importante destacar que el expediente de la C.F.S.E. que correspondía al señor Rivera Menéndez fue estipulado por ambas partes, sin aclarar con qué fines se hacía. De ese expediente estipulado es que surge el documento de la C.F.S.E. que Action utiliza para sustentar

su reclamación. En ese documento, alegadamente, el señor Rivera Menéndez declaró que trabajaba 29 horas semanales.[19] Específicamente, en el documento se declaró que el horario de trabajo del empleado era: lunes, miércoles y viernes de 8:00 a.m. a 4:00 p.m. y, martes y jueves de 8:00 a.m. a 12:00 p.m. No obstante, en el juicio, el peticionario testificó que trabajaba 40 horas semanales. Para contradecir el testimonio antedicho, la gerente de recursos de Action testificó que el señor Rivera Menéndez trabajaba 29 horas semanales. Sin embargo, la gerente de recursos no proveyó ninguna evidencia documental a su favor, ni hizo referencia a documento alguno en el expediente del señor Rivera Menéndez. Así, pues, luego de evaluar ambos testimonios, el Tribunal de Primera Instancia adjudicó entera credibilidad a las declaraciones del empleado.

Ahora bien, de los autos del caso no surgen con claridad los motivos de la estipulación del expediente de la C.F.S.E., ni la información o hechos precisos que se querían estipular. Tampoco surge estipulación alguna, o que se haya pasado prueba, sobre la veracidad del contenido de la declaración jurada del empleado que obra en el expediente de la C.F.S.E., y que hoy es utilizada por Action. La estipulación de un hecho, contrario a la estipulación sobre la autenticación de evidencia, implica el relevo de prueba de ese hecho, por tal razón, los tribunales no debemos dar un hecho por estipulado si ello

---

[19] Apéndice de la Petición de *certiorari* presentada por el señor Rivera Menéndez, págs. 94 y 98.

no surge claramente de lo acordado por las partes. Por lo tanto, debemos concluir que el motivo de la estipulación del expediente tuvo como fin la admisibilidad del documento, como copia fiel y exacta del mismo, y no la veracidad del contenido. Es decir, solo se estipuló la autenticidad del expediente. Contrario a lo expuesto por Action, la estipulación del expediente del empleado fue del tipo de estipulación que versa sobre asuntos procesales (autenticación) y no sobre admisiones de hechos.

Por otro lado, del expediente del caso surge que Action no objetó que se pasara prueba del alegado "hecho estipulado" sobre las horas trabajadas. Al contrario, solo se dedicó a pasar prueba en contrario sobre el mismo asunto de las horas. Ello demuestra la existencia de una controversia sobre la cantidad de horas trabajadas por el empleado y, que a su vez, no existía una estipulación al respecto. Lo anterior también demuestra el hecho de que Action no tuvo problemas con que se pasara prueba sobre el asunto. Incluso, al realizar el contrainterrogatorio, Action no confrontó al empleado con el documento que hoy utiliza como fundamento de su reclamación. La contención sobre dicho documento, precisamente, lo utilizó por primera vez en su reclamación ante el Tribunal de Apelaciones.

Por todo lo anterior, podemos concluir que no existía impedimento para que el Tribunal de Primera Instancia permitiera que se pasara prueba sobre un hecho que no fue estipulado. Así, luego de evaluar los testimonios

presentados, el foro primario acogió la versión del señor Rivera Menéndez y adjudicó la indemnización a base de un periodo laboral de 40 horas semanales.[20] El Tribunal de Apelaciones le brindó deferencia a esa decisión y estamos conformes con su apreciación.

Como es sabido, los tribunales apelativos no debemos intervenir con las determinaciones de hechos ni con las adjudicaciones de credibilidad realizadas por el foro primario, a menos que este último haya incurrido en error manifiesto, pasión, prejuicio o parcialidad.[21] Y es que cuando la evidencia directa de un testigo le merece entero crédito al juzgador de hechos, ello es prueba suficiente de cualquier hecho.[22] De esa forma, la intervención con la evaluación de la prueba testifical procedería en casos en los que luego de un análisis integral de esa prueba, nos cause una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia.[23] Por consiguiente, al considerar que en este caso el Tribunal de

---

[20] De igual forma, vale señalar que de los autos del caso surge un Informe de Conferencia con Antelación al Juicio en el que ambas partes estipularon que el señor Rivera Menéndez trabajaba para Action de

> lunes a viernes en el edificio en donde ubican las facilidades de la Fiscalía de Utuado, ubicadas en el Edificio Cortés en Utuado y además, laboraba durante dos días a la semana, en las facilidades de la Puerto Rico Telephone Company en Utuado Puerto Rico.

Evidentemente, la estipulación anterior es conciliable con el testimonio brindado por el empleado. Además, esa estipulación la utilizó el Tribunal de Primera Instancia en la determinación de hechos número 3 en su Sentencia.

[21] S.L.G. Rivera Carrasquillo v. A.A.A., 177 D.P.R. 345, 356 (2009); Flores v. Soc. de Gananciales, 146 D.P.R. 45, 49 (1998).

[22] S.L.G. Rivera Carrasquillo v. A.A.A., supra, pág. 357.

[23] Íd., pág. 356; Pueblo v. Cabán Torres, 117 D.P.R. 645, 648 (1986).

Primera Instancia no incurrió en ninguna de las actuaciones antedichas, confirmamos la decisión del foro apelativo intermedio de brindarle deferencia a las determinaciones de hechos y a la adjudicación de credibilidad realizada por el foro primario.

III

A. La Ley de Represalias.

Al presentar una causa de acción al amparo de la Ley Núm. 115 del 20 de diciembre de 1991, conocida como la Ley de Acción por Represalia del Patrono (Ley Núm. 115), el empleado tiene dos vías probatorias, a saber: (1) la directa –en la que el demandante deberá probar su caso a través de evidencia directa o circunstancial con la que demuestre un nexo causal entre la conducta del demandado y el daño sufrido– y (2) la indirecta.[24] Si el empleado optare por la vía indirecta, significa que deberá establecer un caso *prima facie* de represalia mediante evidencia que demuestre que, (1) participó en una actividad protegida por la Ley Núm. 115; y (2) que fue subsiguientemente despedido, amenazado o discriminado en su contra por su patrono (nexo causal).[25]

En cuanto al primer criterio, que el empleado haya participado en una actividad protegida por la Ley Núm. 115, es principio reiterado que cuando un empleado acude a la

---

[24] Feliciano Martes v. Sheraton, res. el 29 de junio de 2011, 2011 T.S.P.R. 97, 182 D.P.R. __; Rentas Santiago v. Autogermana, res. el 8 de septiembre de 2011, 2011 T.S.P.R. 131, 182 D.P.R. __ (Sentencia).

[25] Rentas Santiago v. Autogermana, *supra*.

Corporación del Fondo del Seguro del Estado para acogerse a sus beneficios, tal acción constituye una actividad protegida por la Ley Núm. 115.[26]

Por su parte, el segundo criterio es el que requiere que el empleado haya sido despedido, amenazado o discriminado en el empleo, subsiguientemente a su incursión en la actividad protegida. Precisamente, en nuestra reciente decisión de Feliciano Martes v. Sheraton, res. el 29 de junio de 2011, 2011 T.S.P.R. 97, 182 D.P.R. __, tuvimos la oportunidad de examinar a cabalidad dicho criterio, así como el término "subsiguientemente". Resolvimos que al establecer un caso prima facie, bastará que el empleado compruebe "que la acción adversa que experimentó ocurrió al poco tiempo de haber incurrido en la alegada actividad protegida".[27] Es decir, para cumplir con el segundo criterio que requiere la Ley Núm. 115, para establecer un caso prima facie es suficiente con que se establezca la proximidad temporal.

En síntesis, tal y como señalamos en Feliciano Martes v. Sheraton, supra, citando a Marín v. Fastening Systems, Inc., 142 D.P.R. 499, 511 (1997)

> la Ley Núm. 115, supra, crea una presunción juris tantum de violación a la misma a favor del querellante, al disponer que éste establece un caso prima facie una vez prueba que participó en una actividad protegida y que fue subsiguientemente despedido, amenazado o

---

[26] Irizarry v. J&J Cons. Prods. Co., Inc., 150 D.P.R. 155, 165 (2000). Véase además, Feliciano Martes v. Sheraton, supra; Rentas Santiago v. Autogermana, supra.

[27] Feliciano Martes v. Sheraton, supra.

discriminado en su contra en el empleo. Ya el querellante habiendo establecido de forma *prima facie* su caso, el patrono deberá alegar y fundamentar que tuvo una razón legítima y no discriminatoria para el despido. Ante esto, el empleado, aún puede prevalecer si prueba que la razón alegada por el patrono es un simple pretexto para el despido discriminatorio.[28]

### B.

A base del Derecho expuesto, pasemos a considerar el segundo error, en el que el señor Rivera Menéndez arguye que el Tribunal de Apelaciones incidió al concluir que no logró probar que fue despedido en represalia por haber acudido a la C.F.S.E. Le asiste la razón. Veamos.

De los hechos del caso de autos surge que el señor Rivera Menéndez sufrió un accidente en el lugar de trabajo el 24 de agosto de 2006. A causa de ello, acudió a la C.F.S.E. para recibir tratamiento. Luego, poco más de un mes después, el 3 de octubre de 2006 la C.F.S.E. determinó que el empleado podía continuar con el tratamiento médico mientras trabajaba. Según determinó el Tribunal de Primera Instancia, el señor Rivera Menéndez realizó varias gestiones para comenzar a trabajar nuevamente, pero no recibió contestación de Action sobre cuándo podía ser reinstalado en su empleo. El 14 de noviembre de 2006 el señor Rivera Menéndez envió una carta a su patrono en la que solicitó que se le reinstalara en su empleo, sin embargo, Action no lo reinstaló. Por ello, el Tribunal de Primera Instancia resolvió, entre otras cosas, que el

---

[28] Véanse, <u>Feliciano Martes v. Sheraton</u>, *supra*; <u>Rentas Santiago v. Autogermana</u>, *supra*, para un análisis más detallado sobre la Ley Núm. 115.

despido del señor Rivera Menéndez fue en represalias por haber acudido a la C.F.S.E. a recibir tratamiento.

Por su parte, el Tribunal de Apelaciones no estuvo de acuerdo con la determinación y resolvió que el señor Rivera Menéndez no probó que sufrió un despido por represalias. Ese foro, aunque reconoció que el señor Rivera Menéndez fue despedido sin justa causa[29] y que Action incumplió con su deber de reinstalarlo, señaló que tal incumplimiento no activaba una causa de acción por represalia en contra de su patrono al amparo de la Ley Núm. 115. De esa forma, al llegar a esa conclusión, el foro apelativo intermedio omitió entrar en los méritos de la controversia que versa sobre la Ley Núm. 115. Sin embargo, consideramos que la normativa expuesta en ese estatuto es aplicable al caso de autos.

En primer lugar, es importante señalar que cuando el señor Rivera Menéndez acudió a la C.F.S.E. para acogerse a los beneficios provistos por la Ley Núm. 45,[30] su proceder constituyó una actividad protegida por la Ley Núm. 115. En segundo lugar, quedó probado que el señor Rivera Menéndez, luego de que la C.F.S.E. determinó que podía volver a trabajar, realizó las gestiones necesarias para regresar a su empleo rápidamente. Además, vale destacar que la determinación de la C.F.S.E. se realizó a solo un mes y varios días después de la fecha del accidente. No obstante,

---

[29] La determinación de despido injustificado no está en controversia.

[30] Ley del Sistema de Compensaciones por Accidentes del Trabajo, Ley Núm. 45 del 18 de abril de 1935, 11 L.P.R.A. sec. 1 *et seq.*

las gestiones del empleado no surtieron frutos, pues Action nunca le devolvió su puesto de trabajo.

En vista de lo anterior, el señor Rivera Menéndez logró probar que participó de una actividad protegida y que *subsiguientemente* fue despedido por su patrono, ya que nunca lo reinstaló. De esa forma, el señor Rivera Menéndez configuró un caso *prima facie* de represalias que activó una presunción *juris tantum* de violación a la Ley Núm. 115, en contra de Action. Ante tal presunción, le correspondía a Action articular una razón justificada que legitimara el despido del señor Rivera Menéndez. No lo hizo.

Con la intención de dar una razón justificada, y destruir la presunción a favor del señor Rivera Menéndez, Action alegó que no lo había despedido, sino que él había abandonado el empleo. Adujo, además, que al empleado se le ofreció ser reinstalado en otros lugares y no lo aceptó. No obstante, cuando el Tribunal de Primera Instancia evaluó toda la prueba testimonial y documental, consideró que las alegaciones de Action no le convencieron al punto de lograr rebatir la presunción a favor del señor Rivera Menéndez. Por consiguiente, concedió los remedios correspondientes que permitía la Ley Núm. 115.

Como ya hemos expuesto, es norma altamente reiterada que los tribunales apelativos no debemos intervenir con las determinaciones de hechos, ni con la adjudicación de credibilidad del foro primario a menos que este último haya incurrido en error manifiesto, pasión, prejuicio o

parcialidad.[31] Así, pues, de la única manera en que podemos intervenir con la determinación realizada por el foro primario, sería porque entendiésemos que este último incurrió en error manifiesto, pasión, prejuicio o parcialidad. Sin embargo, al examinar el expediente surge que el peticionario logró establecer un caso *prima facie* de represalias que el patrono no pudo rebatir. De esa forma, la actuación del foro primario de conceder los remedios dispuestos en la Ley Núm. 115, fue acertada. Por ende, revocamos la decisión del Tribunal de Apelaciones en lo pertinente.

IV.

En armonía con lo antes señalado, se revoca en parte la Sentencia del Tribunal de Apelaciones y se reinstala la determinación del Tribunal de Primera Instancia que otorgó los remedios bajo la Ley Núm. 115, y así modificada, se confirma.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo
Juez Asociado

---

[31] S.L.G. Rivera Carrasquillo v. A.A.A., supra, pág. 356.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Wilfredo Rivera Menéndez<br><br>Peticionario<br><br>v.<br><br>Action Service Corp.<br><br>Recurrido<br>———————————<br>Action Service Corp.<br><br>Peticionario<br><br>v.<br><br>Wilfredo Rivera Menéndez<br><br>Recurrido | CC-2010-74<br><br>Cons. con<br><br>CC-2010-82 | Certiorari |

SENTENCIA

En San Juan, Puerto Rico, a 13 de abril de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca en parte la Sentencia del Tribunal de Apelaciones y se reinstala la determinación del Tribunal de Primera Instancia que otorgó los remedios bajo la Ley Núm. 115, y así modificada, se confirma.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo, Interina.

Larissa Ortiz Modestti
Secretaria del Tribunal Supremo, Interina